. HART and others *vs.* SEIXAS.

It is *not error*, though it be omitted to be stated in the record of a judgment rendered by a court of *general jurisdiction*, that the court had obtained *jurisdiction of the person* of the defendant, by alleging him to be *in custody*, &c., or that he had been *served with a declaration*, or had *appeared*, or something equivalent to such allegations.

The necessity of such averment, as suggested in *Smith* v. *Fowle*, 12 Wendell, 9, denied ; or at all events supplied by the entry of an imparlance and default.

The omission in the declaration of such allegations, as *in custody*, &c., is not even cause of special demurrer.

Where the *debt* demanded is $300, and the plaintiff takes judgment *for his said debt*, together with *damages* and *costs*, although the record shows a right to recover only $200 *debt*, a judgment by default will not for that cause be *reversed*, it being mere matter of form, *amendable* in the court below, and which the court in error may *disregard*.

Where there is a *variance* between the *debt demanded* and the several sums alleged in the different counts *to be due*, error will not lie ; nor is such variance even cause of demurrer.

A judgment will not be reversed for errors in *matters of practice*, though brought up by *certiorari*.

The question, *when jurisdiction will be presumed*, considered.

It is *not error*, though it does not appear in the record of a judgment rendered by a court of common pleas, that the defendant at the time of the commencement of the suit was *a resident of the county*.

See the *dissenting opinion* of Mr. Justice BRONSON, to the first proposition above stated.

ERROR from the New York common pleas. *Seixas* commenced a suit against *Hart, Bush* and *Young*. By the record returned to the writ of error it appears that the declaration commences in this form : " Benjamin M. Siexas assignee of John Hillyer, sheriff of the city and county of New York, pursuant to a statute, plaintiff in this suit, by A. D. R., his attorney, comes here into court, and by this declaration filed pursuant to statute, complains of Joseph C. Hart, George Bush and George Young defendants, residents of the said city and county of New York, of a plea," &c. The plaintiff then demands $300 of debt, and sets forth a bond executed by the defendants in the *penal* sum of $100, conditioned that if *Young* should appear on the

Hart v. Seixas.

return day of an attachment issued by the vice chancellor of the first circuit, and abide the order of the court, the obligation should be void.   The plaintiff then avers that Young did not appear, whereby the bond became forfeited, and the vice chancellor made an order directing it to be delivered over to the plaintiff to be prosecuted ; which was done accordingly.   By means whereof an action accrued to the plaintiff, to demand and have the said sum of $100 ; yet the defendants had not paid the said sum, &c.   Then follows a *second count* upon the same bond, wherein after setting forth the bond and condition, the plaintiff avers that on, &c. the vice chancellor ordered the bond to be continued over, that Young should within 10 days pay the costs, of the attachment and answer the plaintiff's bill filed against him ; that Young did not pay the costs of the attachment or answer the bill within the time limited by the order, whereby the bond became forfeited, &c. as in the *first* count. Next follows an *imparlance* in these words, "And now at this day, to wit, on, &c. until which day the said *Joseph C. Hart* and *George Bush* had leave to imparle, &c. comes the said plaintiff by his attorney aforesaid, (the said *George Young* being not found or served with a copy of the declaration filed in this cause pursuant to the statute,) and the said Joseph C. Hart and George Bush at the same time solemnly called, come not, nor do they say any thing in bar or preclusion of the action aforesaid."   Then follows the award of a writ of inquiry, an inquisition assessing the plaintiff's damages at $100, and a judgment against *all* the defendants, that the plaintiff recover *his said debt*, $100 for his damages, and $29 for costs and charges.

The defendants sued out a writ of error, and besides a general assignment of errors, *specially* assigned for error, 1. That there is *no declaration* on file authorizing the entry of the judgment ; 2. That the suit was originally commenced against but *two* of the defendants, viz. Hart and Bush ; 3. That the plaintiff illegally amended the declaration filed, by adding the name of Young ; 4. That such amendment was made without any rule authorizing it ; 5. That there is no affidavit on file of the personal service of the *original* or

*amended* declarations on *Hart* and *Bush*, authorizing their appearance to be entered ; and 6. That there is no entry of their appearance.   The defendants thereupon prayed a *certiorari*, requiring the common pleas to certify, &c.   The writ issued, and the C. P. returned that they find no original declaration on file in which *Siexas* is plaintiff, and *Hart*, *Bush* and *Young* are defendants, but that they find that an action was commenced by *Seixas* against *Hart* and *Bush ;* that Seixas amended his declaration in such action by adding the name of *Young*, in pursuance of a rule to amend granted 2d July, 1835.   The common pleas also returned affidavits by which it appears that a copy of the *original declaration* was served on *Hart personally*, on the 11th May, 1835, and a copy of the *amended declaration* on his *clerk* in his office ; also that a copy of the *original declaration* was served on *Bush* on the 9th May, 1835, (but no affidavit was returned of the service on Bush of the *amended* declaration.) The court further returned, that on filing the said affidavits the *appearance* of Hart and Bush was entered.   To this assignment *Seixas* pleaded *in nullo est erratum*.

*J. L. Wendell*, for the plaintiffs in error.   The judgment is erroneous ; it is not shown *by the record* that the common pleas had *jurisdiction over the persons of the defendants*.   12 Wendell, 11 ; and on the other hand it is shown *affirmatively* by the return to the certiorari, that the court *had not* jurisdiction.   There is no *original declaration* on file against *all* the defendants ; the plaintiff had no right to amend by adding a new defendant, 8 Cowen, 122 ; but if he had such right, a copy of the *amended declaration* should have been served *personally* upon the defendants, which was not done upon *either* of them.   The declaration also is *bad* in not assigning breaches.   The first count does not pretend to assign a breach ; and the second is radically defective : it alleges the non-payment of the costs of the attachment, without stating that there were any costs to be paid, or specifying the amount. The judgment is erroneous also in amount : it is for $300 debt, when, according to the *penalty* of the bond, it ought to have been for only $100 debt.

*A. L. Robertson*, for the defendant in error.

Hart v. Seixas.

*By the Court,* Cowen, J.   The only point now raised bearing the semblance of a substantial error is, that breaches of the bond are not assigned; and that is contrary to the fact. The condition was *that Young should appear;* and the breach assigned in both counts is, that *he did not appear,* the second count adding an order to pay costs, and the disobe-dience of that order.   This is a full compliance with the sta-tute requiring breaches to be assigned on bonds with a con-dition other than for the payment of money.   2 R. S. 300, 2d ed. § 6.   The action on attachment bonds pursuant to an order of court, is by statute put on the same footing as that on a bond for performance of covenants.   A general breach is sufficient, on which the damages are to be assessed by a jury according to the extent of loss or injury sustained by the plaintiff.   Id. 444, § 28, 29.   *Thomas* v. *Cameron,* 17 Wend. 59, 61.

The proceeding was under the joint debtor act, 2 R. S. 300, 2d ed. § 5, and as such is perfectly regular on the face of the record, if that is to be taken as importing a proper ser-vice of the declaration upon, or the appearance of *Hart* and *Bush.*   It admits, in the imparlance clause, that Young was not served with process.   This is a correct form with a view to save his future rights; but its omission would be mere matter of irregularity, to be corrected on motion in the court below.   The record, the only thing we can notice on error, would be equally perfect with or without it.   In either case judgment should be entered as it is here, against all the defendants, though its well known effect is to reach only the joint property of the defendant who shall not be brought into court.

As to the amount of the judgment.   The declaration is for $300 in debt.   This is not filled up by the counts, but that is agreed to be mere matter of form, which cannot be noticed on error, and probably not even on special demur-rer.   Mr. Chitty says, " the debt demanded should regu-larly be the aggregate of all the sums alleged to be due in the different counts ; but a mistake in this respect, whether more or less, will not be a cause of demurrer ; nor is it ne-cessary to prove that the debt amounted precisely to the

sum stated to be due." 1 Chit. Pl. 309, of the Phil. ed. of 1828. But the judgment is, "that the plaintiff recover against the defendants his said debt aforesaid; and also $100 for the damages which he hath sustained by reason of the detention of that debt, and also $29 for his costs, &c." It is objected, therefore, that the judgment is for $300 debt, whereas the penalty of the bond set forth in each of the two counts is $100 only. By the default two such bonds are confessed; but that will carry the debt to $200 only, yet the plaintiff takes judgment for his *said debt.* If these words mean the whole $300, as I think they must be taken to do, the judgment is erroneous for the excess of $100. In argument, it was said the damages were also $100, and the whole made up the full sum demanded. The damages are no part of the debt in demand. The statute is that judgment shall be rendered for the penalty, or penal sum forfeited, as in other actions of debt; and with a farther judgment, that the plaintiff have execution to collect the amount of damages assessed. 2 R. S. 301, 2d ed. § 10. Yet the judgment is, in this respect, but matter of form; for, by the next section, execution shall, though it goes for the whole, be endorsed but for the real damages and costs; and by the next, on collecting these, the judgment shall be deemed satisfied. § 11, 12. The case is not like that of a judgment sounding in damages, which governs the execution, and so might prejudice the defendant; but it is the same thing in substance, whether it stand for the less or greater sum. The substance lies in the judgment for *damages and costs,* which shows the true sum, and overrules or supersedes the debt. Therefore it is amendable in the court below, and may be disregarded here by 2 R. S, 343, § 4, and 498, § 60, 2d ed. By this § 4, after judgment rendered, any defects or imperfections in matter of form in the record, &c. may be amended, and a variance in the record from any proceeding, is specially mentioned. This judgment for $300 may be considered a variance or departure from what is required by the previous proceedings. Section 7 of the same statute, id. p. 344, provides for amending mistakes in stating sums of money after judgment by default, in all cases

Hart v. Seixas.

where the sum has been once rightly alleged. See sub. 10. Then § 60, at p. 498, declares that no judgment shall be reversed, &c. for any defect of form, variance or other imperfection in the record, &c. amendable in the court below, but such defects and imperfections may be supplied and amended, or be deemed so to be, by the court of error. In this case the mistake may be overlooked and suffered to stand, for it does not work any prejudice.

But the declaration omits the words "in custody, &c." or any equivalent words, which are insisted on as essential jurisdictional terms, without which the judgment below cannot be sustained. This question was very fully considered in the late case of *Foot* v. *Stevens*, 17 Wendell, 483, in its bearing on a collateral action to enforce the judgment. We there agreed that the court of common pleas is one of general jurisdiction, and that the want of· this allegation did not so far invalidate the record as to defeat the action ; in other words, that the record was not void ; and we agreed that this was so, though it no where appeared by the record that the defendants were served with a declaration, or were in custody, or had appeared. It has been often held that the omission of these facts in the declaration is no ground for demurrer, even though it be special. See several cases in a note, 12 Wendell, 12, and *Smith* v. *Fowle*, id. 9, 11. In the last case, ‘the late Chief Justice Savage adds : "But the pleader should take care, however, to show in his record that the court had jurisdiction of the person of the defendant before judgment is entered against him. When the defendant appears, the fact will be apparent upon the record, and when judgment is entered by default, the record should show the jurisdiction of the court by a compliance with the directions of the statute. But the declaration cannot contain those facts. They are to follow, not precede, the filing of the declaration."

The record before us fails to show directly that the court below had acquired jurisdiction by the service of process, and supposing it to show no appearance, the question is whether a court of general jurisdiction is bound to show its regularity expressly, or whether it will be intended ? The conse-

quence of the omission was not adverted to in *Smith* v. *Fowle.* The remark of the learned chief justice was *obiter;* and it certainly never has been holden that such an omission is error. Nor, with great deference, can it be so held, until we take it upon us to overturn the well settled doctrine of centuries. I understand the case of *Peacock* v. *Bell,* 1 Saund. 73, as speaking the manner in which courts are to treat records which are brought before them on writs of error. That was error from a judgment in assumpsit of the court of the county palatine of Durham, whose jurisdiction was of such promises only as were made within the limits of the county. The declaration did not aver that the goods on sale, of which the promise was made, were sold within the county. Wherefore it was alleged for error, that it did not appear but that the goods might have been sold in another place, *precisely* as it is said here, *it does not appear but that the declaration might not have been served.* It was there agreed that many judgments from *inferior courts* were daily reversed for that cause. But the judges first went on to show that in respect to the palatine court, questions of jurisdiction stood on the same footing as they would on error from a superior court. They then add and the rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so, and on the contrary nothing shall be intended to be within the jurisdiction of an inferior court, but that which is so expressly alleged, and though the court of the county palatine is inferior to this court of king's bench, yet that does not prove it to be *an inferior court,* in the sense *that it ought to certify every thing precisely;* for the common bench is inferior to this court; but yet it is an original and superior court, of which the law itself takes notice, and so is the court of the county palatine; and consequently the omission in the declaration is no error, because it shall be intended that the contract was made within the jurisdiction if it does not appear to the contrary. It is said that this was a question of local jurisdiction, which I freely admit. But in that I insist it is a case of much more difficult intendment than the regular service of process. In respect to the former, so

strict is the law, that on error to an inferior court, as was agreed in the case cited, it requires jurisdiction to be expressly certified in the return to a certiorari. But even the lowest court is never required to show expressly that its process has been served ; not even where it proceeds in a criminal matter.

In *Rex* v. *Venables*, 1 Str. 630, which was a certiorari from a criminal conviction by justices, it was moved to quash it on the return, for want of showing a summons or appearance of the defendant. " *Sed per curiam.* We will not presume they acted unlawfully. A summons is certainly necessary, and the justice is punishable if he proceeds without. You never show notice to the parish that is to be charged in orders of removal." This case is also reported in 2 Ld. Raym. 1405, where the court said, it not appearing by the order that there was no summons, or that there had been an ill summons, they *would intend the justices having jurisdiction proceeded regularly.* Fortesc. 325, S. C. In *Rex* v. *Cleg,* 1 Str. 475, on the return of an order of bastardy, originally made at the quarter sessions, an objection was taken that it should be quashed, because it was *not said the defendant was ever summoned or appeared.* Pratt, C. J. at first hesitated, because, as he remarked, he had often heard it said that nothing shall be presumed one way or the other in an inferior jurisdiction. But Eyre J. said that in *Rex* v. *Peckham,* Carth. 406, the court said, " Where a summons was necessary, they would presume there was one, unless the contrary appeared, for *all jurisdictions are presumed prima facie to act according to law.*" Fortescue J. said, " It is certain that natural justice requires that no man shall be condemned without notice ; for which reason I think the order will be good, because it does not appear to us that he had no notice. *Are we to suppose the sessions have proceeded contrary to right and justice, and that too in a case where they have undoubted jurisdiction ?*" The case was afterwards moved again, and the order confirmed without opposition. " Therefore," says Mr. Nares, " wherever a summons is necessary, the court presumes one, unless the contrary appears ; for all jurisdictions are presumed to act *prima*

*facie* according to law." Nares on Penal Conv. 10. "It is usual and proper," says Mr. Nolan, "to state that the defendant was summoned ; and that he either appeared in consequence thereof, or neglected to do so. But it is not in strictness necessary that this should be averred on the face of the proceeding, as the court will intend that it was unless the contrary appear." 2 Nol. Poor L. 269. In *Rex* v. *Clayton*, 3 East, 61, Lord Ellenborough said, "The law has been settled by so strong a series of decisions from the time of Lord Holt down to a very recent period, that every intendment shall be made in favor of an order of justices, that we must see whether by any intendment which can be made, the present order can be supported."

Nor will the courts mouse about by certiorari, to snatch up collateral flaws in the orders of justices. In the late case of *Rex* v. *The Justices of the Hundred of Cashionbury*, 3 Dowl. & Ryl. 35, Brougham moved for a certiorari, to bring up a flaw which did not appear on the face of the conviction. The court said that no objection could be taken unless it appeared on the face of the conviction itself, and not upon any collateral proceeding.

In *Brown* v. *Wood*, 17 Mass. Rep. 68, on giving in evidence the probate of a will of lands, though the statute expressly required notice to the heir, none was mentioned, yet the court intended it. Jackson, J. observed p. 72, "upon the common presumption in favor of every judicial tribunal, acting within its jurisdiction, we must intend that all persons concerned had due notice."

In the case at bar, we are asked to withhold from the common pleas of New York, a court of general jurisdiction, that favorable intendment on a return to a writ of error, which Westminister Hall accords to the most humble and limited branches of the English police. It is not necessary to deny that we have been more exact in scanning returns from justices. If so, it is because they hold *inferior courts*, in which I admit we do require, that on judgment by default, a regular return to a regular summons should appear. But that is, because a single justice is a court of inferior jurisdiction and limited powers. Whereas, I must have been

quite unfortunate in *Foot* v. *Stevens*, if I failed to show that we have always regarded the common pleas, in the quality of its jurisdiction over subject matter, as on a footing with this court. It proceeds according to the course of the common law, through its educated attorneys and counsellors, mostly practitioners in this court; by its jury, its sheriff, clerk, indeed the same machinery throughout. I do not understand it to be denied that the records of that court are entitled to the same favorable interpretation with our own, nor that every intendment in favor of official, moral and prudential accuracy, honesty and care, is due to them which would be applied to the courts of Westminister Hall or to this court. Why, then, are we asked to withdraw from the superior courts the maxim which we extend even to all the graver transactions of private life : *Omnia præsumuntur legitime facta, donec probetur in contrarium ?* Co. Litt. 232, b. Has history shown their general corruption, and stamped them with suspicion ? That is not pretended. Is there any authority in this or any other common law court against such intendment ? I have found none. None was cited by counsel on the argument; none has been found by either of my learned brethren ; and I am therefore bold to say that none can be found. 1 inquired for an authority a full term and vacation since, and all research has been vain. 1 have been referred to the uniform commencements of declarations, which in the king's bench are always *in custody*, &c. ; or, in the common bench, that the defendant was *attached* or *summoned to answer*, &c. But this is evidently mere matter of form. I want a case where the omission was ever holden for error, or where any English judge ever supposed it would be error. That it is commonly a part of the declaration, is no answer, any more than that pledges to prosecute are a part, the omission of which we hold is not even ground of special demurrer. I admit that the short recital at the beginning of the declaration is still kept up by the new English rules, and it is required, instead of the old form, to distinguish and show how the defendant was proceeded against, as whether by summons, arrest, service of writ, &c. 5 Bligh, 617, 618. I do not

deny that this may be very well.   But I do deny that the omission was ever holden for error, or that it is any thing more than a mere formal defect amendable, even if it be so much.   The same rules require the plaintiff to state the form of action ; but the omission has been disregarded as not even a ground of special demurrer.   *Anderson* v. *Thomas*, 9 Bing. 678.   Mr. Chitty says, that " in general, the recital or reference to the writ in the commencement of the declaration is not considered as any part of the declaration, and consequently a mistake therein is no ground of demurrer."   1 Chit. Pl. 256, 257, Am. ed. of 1828.   Mr. Boote says that the recital, as to the process, was originally an entry by the prothonotary, that it might appear that the court had cognizance of the cause.   Boote, 65.   He says the words *in custody,* &c. in the king's bench, are a mere idle fiction, and recommends the total omission, in all courts, of any allusion to the mode in which the court has obtained cognizance of the cause.   Id. 72, note.   Id. 73, 74.   He expresses his surprise that the words *summoned,* &c. *and attached,* &c. should be continued, " notwithstanding the practice to which they relate has been discontinued some hundreds of years :" and adds, " What religious observers of antiquity have the practisers of the law been, in all things that were not absolutely forbidden them !" Id. 75.

On the whole, I think it plain from the best English writers, that they consider the omission as the merest matter of form.   I admit there is no case directly denying that it is error ; which I cannot doubt is owing to the fact that no one ever thought of its being so, until modern subtleties came to be raised on the new mode of declaring under the revised statutes.   It is perhaps to be regretted that the ordinary introductory words of a declaration had not been kept up as was the case in the action of ejectment before the statute.   If the defendant was not properly served, he moved to set aside the proceeding for irregularity.   Such is his true course in regard to all suits by declaration.   The recital of service, or that he is in custody, does not conclude him.   It is *ex parte,* and so of any entry which the plaintiff

Hart v. Seixas.

makes upon the record, as that he has been served or has appeared.

But the direct and strong authorities are, that on certiorari to the inferior magistrates, due service of the proper process shall be intended. *A fortiori* of the process of the higher courts, which is various in its forms, and less open to abuse. Why did the defendants below lie by and bring error? If they had not been regularly served, did they doubt the common pleas would set aside the proceedings? When was a writ of error ever sustained for a mere collateral irregularity, the subject of a summary application?

With regard to the errors assigned in respect to amendments, affidavits, rules, &c., we shall see presently, upon authority, that they are not noticeable on writ of error. To my mind they are material only as showing that the proceeding before us is the more unreasonable, because, from the certiorari which the plaintiffs in error have themselves caused to be returned, it appears that they had actual notice by a personal service of a declaration as early as in the month of May, 1835. The declaration served on them was against all three of the defendants, obligors in the bond, though the one on file was against two only. But that was afterwards amended by adding the third, who could never be found. There was no affidavit that the amended declaration was served personally; but there was enough in the original service to give the defendants all reasonable notice that they were pursued. Their appearance was entered by the clerk; and judgment by default taken against them. They must have had notice of all this years ago; and it is too late now to move the court below to set aside the proceedings. It is certainly a new method of practice, to let time go by in the court below, and then move here upon a writ of error. The amendment having been made in the court below, we must take every thing to be right in point of form; that the original declaration had been so, as well as the one on file as that which was served. Amendments and matters of practice there are things of discretion; and it has been often held that they cannot be noticed here, though brought up by certiorari. It will be sufficient

to cite the last case decided on the subject. It is a full answer to all the errors insisted on as existing in the out works of this record. The case I mean is *Mellish* v. *Richardson*, reported in several books, but most generally circulated among the profession in 9 Bing. 125. Error was there brought to reverse an amendment; and all the judges of England agreed that it would not lie, although the order for amendment was sent up as a part of the record. They laid down the following rules: That the proper object of a writ of error is to remove the final judgment with its premises, which are "the pleadings between the parties; the proper continuance of the suit and process, the finding of the jury upon an issue in fact, if any such has been joined; and lastly the judgment of the inferior court." These, it was said, the parties below have a right *ex debito justitiæ* to have upon the record. The judges add, "The practice of the courts below is a matter which belongs by law to the exclusive jurisdiction of the court itself; it being presumed that such practice will be controlled by a sound legal discretion. It is, therefore, left to their own government alone, without any appeal to, or revision by a superior court; and we cannot but observe, that no precedent has been cited at the bar, in which an entry similar to that contended for by the plaintiff in error is to be found. The court therefore, refused to notice the ground or order for the amendment, although both were returned. This case shows that we have nothing to do with the declaration original or amended, the rules, affidavits, mode of service, &c., returned here. The party can not pass by such matters of regularity in the court below and bring error. The rules of judging on summary application and on error are different; and the subjects of the two should therefore be kept distinct. With regard to practice, any slip made by the party must be moved against the very first opportunity; and by statute no judgment of a court of record can be set aside for irregularity on motion after one year, 2 R. S. 2d ed. 282, § 2; whereas writs of error are limited to two years. Id. 493, § 21. The irregularity, says Eunomus, that pushes a cause

out of its course must be redressed by the interposition of the court. Dialogue 2, § 25.

Having considered *Mellish* v. *Richardson*, in its application to those several matters of practice which the plaintiff has endeavored to pick up and bring before us by a *certiorari*, I think the case may also be made to bear on the question whether the omission to show by the record a service of the declaration is error. In stating what is the substance of error, the judges enumerate the *pleadings, continuances, verdict* and *judgment*. They take no notice of any memorandum upon the record, as to the mode in which the defendant may have been served with process, or the fact of appearance. It evidently never entered their minds that omitting to mention either would be ground of error. Such a memorandum we have seen by authorities both in England and in this court, make no part of the declaration or pleadings.

But admitting that we are to reverse the rule of intendment, is the objection well founded in point of fact? Although it does not appear directly on this record *that the defendants were served*, I think it is virtually declared *that they appeared in the cause*. It states an imparlance of Hart and Bush, from April to September term. The words are, " to which day the said *J. C. Hart* and *Geo. Bush* had leave to imparle to the declaration aforesaid, and then to answer, &c. ;" but they being solemnly called at that day, came not. Now an imparlance is by the court giving them leave, on petition, to answer at another time, or giving time to plead. Toml. Dict. Imparlance. It is not easily conceived how there could be an imparlance and then a default, without an appearance. In *Rex* v. *Simpson*, 1 Str. 44, which was a conviction for deer stealing, an objection was taken that the summons set forth in the conviction did not specify the place and hour. It was only *that he was summoned at that time and place ; but made default*. The court said : " the default entered by the justices implies the summons was *to appear* at that time and place; for *otherwise it would not be a default*." The case at bar is stronger. There is entered on the record here both *an imparlance and*

*default,* neither of which could possibly have been without an appearance of, or a notice to the defendants below, who are here complaining that they had no chance to be heard. For one, I cannot consent to withhold from this record at least the very fullest measure of favorable intendment which Westminster Hall accords to common magistrates on a record of deer stealing. If appearance or service be implied by the imparlance and default, then the rule laid down in *Smith* v. *Fowle* is satisfied in its severest application.

I had occasion to observe also in *Foot* v. *Stevens,* that if the record was there to stand impeached for defect of form in not showing service of appearance, I thought we ought to allow the cause to stand over until the court below could be moved to amend. I thought then, and I am clear still, that the case is a proper one for amendment, within the 2 R. S. 343, 2d ed. § 4. See 17 Wendell, 487, 488. It is remarkable that while we were holding that cause under advisement, the common pleas, as I was afterwards informed by my brother Bronson, on what he had heard, actually did amend the record, by an express and direct entry. They did this, doubtless, because it was according to the truth, as we cannot but see it would be in the case now at bar. But we have also seen that, in a proper case, we can ourselves either amend or overlook defects where they are prejudicial to nobody. 2 R. S. 498, 2 ed. § 60. I feel entirely convinced from the showing of the plaintiffs in error themselves, that there is no foundation for their objection. They had regular notice on an informal declaration, it is true; but it could not substantially prejudice them, that Judge Irving afterwards allowed the declaration to be amended. If, therefore, the defect could, in general, be at all regarded on error, I think, under the circumstances here, we ought to overlook it.

In any view, which I have been able to take of this case, I see no error; and am of opinion that the judgment should be affirmed.

Mr. Justice BRONSON delivered the following dissenting opinion :

This was a judgment by default, and it does not appear from the record that the court below obtained jurisdiction over the persons of the defendants. It is not averred that the defendants were in custody, or that they had been served with process, or a copy of the declaration. There is nothing in the record from which we can say that either of the defendants had the opportunity of being heard before the judgment was rendered. If a copy of the declaration was served, that fact should appear by the record to give the court jurisdiction. *Smith* v. *Fowle*, 12 Wendell, 9.

In *Denning* v. *Corwin*, 11 Wendell, 647, a judgment of this court in partition was given in evidence, and because it did not appear from the record that the court had acquired jurisdiction in relation to unknown owners in the manner prescribed by law, the judgment was held a nullity ; it was not only merely erroneous, so that error would lie ; but was absolutely void, so that the objection might be taken in a collateral action or proceeding. On a review of the same question in *Foot* v. *Stevens*, 17 Wend. 483, we held that the judgment was voidable only, not absolutely void ; and that the defendant could not avail himself of the objection in an action on the judgment. His remedy was by motion in the court where the judgment was rendered, to set it aside, or by writ of error. This distinction was taken in *Kempe's lessee* v. *Kennedy*, 5 Cranch, 173, 185, where the objection was, that the court of common pleas, in which the judgment was rendered, had no jurisdiction over the person of the defendant. Marshall, Ch. J. said, the judgment was not an absolute nullity, which might be totally disregarded ; but it was erroneous, and might certainly be reversed. On this distinction I assented to the decision in *Foot* v. *Stevens*, although it partially overruled the case of *Denning* v. *Corwin*. We are now asked to go further, and say that there is no *error*, although the record fails to show any jurisdiction over the person of the defendant. To this doctrine I cannot assent.

The case of *Peacock* v. *Bell*, 1 Saund. 73, is relied on as authority in support of this judgment. It was a writ of error to the court of the county palatine of Durham. The plaintiffs in the court below declared that the defendant on, &c.

Hart v. Seixas.

*at the city of Durham,* was indebted to the plaintiffs in £39, for divers merchandizes and wares by the plaintiffs to the defendant before that time sold and delivered ; and being so indebted he promised to pay. The defendant appeared and pleaded to the action, and after a verdict and judgment for the plaintiffs, it was objected for error, that although the promise was made at Durham, yet the wares might have been sold and delivered at another place, out of the jurisdiction of the court. The plaintiff in error sought to apply the rule in relation to *inferior* courts of limited territorial power, that the *consideration* of the promise, as well as the *promise* itself, must be laid in the declaration within the jurisdiction of the court. Note 3 to this case. *Saunders,* of counsel for the defendants, said the court of the county palatine was among the number of *superior* courts, and that " the rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so ; and on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged." A majority of the judges finally declared themselves of this opinion, and, although *Kelynge,* Ch. J. dissented, the judgment was affirmed. This was not a question of jurisdiction over the person of the defendant, but in relation to the subject matter of the action. The defendant had appeared in the court below and pleaded ; and in such a case it was but a reasonable intendment, nothing appearing to the contrary, that the cause of action arose wholly within the jurisdiction of the court. But I find no case which sanctions any intendment in favor of jurisdiction *over the person* of the defendant ; and I am unwilling to indulge any presumption against a party, who, so far as appears, has never been summoned or had the opportunity of being heard. When it appears that a court of general powers has acquired the right to act in relation to the parties, presumptions may be liberally indulged in support of its proceedings ; but we cannot presume jurisdiction over the person of the defendant without the danger of subverting one of the first principles of justice.

The case of *Buchanan* v. *Bucker*, 9 East, 192, is an authority for holding this judgment not only erroneous, but absolutely void; and *Kempe's lessee* v. *Kennedy*, 5 Cranch, 173, 185, is an authority for saying it should be reversed. If there be any authority in favor of affirming the judgment, I have not met with it; and such a course is contrary to all my notions of the right administration of justice.

Judgment affirmed.[*]

---

[*] During this term the case of *Kelly and others* v. *Kelly & Donnelly* was also affirmed on a writ of error to the New York common pleas. The error relied on was that it did not appear by any allegation in the record that the defendants below were *residents of the county of New York.* Judge BRONSON was of opinion that the error was fatal, and that the judgment ought to be reversed, but the CHIEF JUSTICE and Judge COWEN were of a different opinion, and for the reasons assigned above, *affirmed* the judgment.