By the Court, Cowen, J.
The third avowry is simply, that the place where the goods of the plaintiff were distrained, was parcel of certain premises for which there was then and there seventy-five dollars rent due to the defendant, viz. one quarter’s rent accruing from the 1st of January, 1842, to the 1st of April in the same year; and because it was in arrear, she caused distress to be made. That there was any landlord or any tenant of the premises while the rent was accruing or at the time of the distress, is not shown. For aught that appears, the rent was due on a demise which had expired, without any one holding over, the entire premises having passed into the hands of a stranger; Nay, no demise whatever is set out or even hinted at. The rent may have been charged on the land by some former owner not privy to any demise.
The omission to show that the defendant stood in the relation of landlady to some tenant of the premises, who held at the time of distress, seems, of itself, to be fatal.
Tie most general avowries are those allowed by 11 Geo. 2, ck. 19, § 22, now re-enacted here. The provision in our statute is as follows: “ The defendant may avow or make cognizance generally, that the plaintiff in replevin or other tenant of the lands or tenements &c., enjoyed the same under a grant or demise, or by any other title, at a certain rent &c., during the time wherein the rent distrained for was incurred &c.; or that the place where the distress was taken, was parcel of certain tenements for which the rent or service distrained for, was, at the same time of such distress, and still remains, due; without farther setting forth the grant, tenure, demise, or title of the landlord or lessor ; and without naming any person certain, as the tenant of such lands or tenements.” (2 R. S. 436, § 41, 2d ed.) This section, with the exception of the clause at the end, relative to naming the tenant, is nearly a transcript of the 22d section in 11 Geo. 2, ch. 19. (See note in 3 R. S. 770.) The last clause is copied from our statute of 1788. (1 R. L. 99, § 9, ed. of 1801.) The revisers have left an obscurity in § 41 by omitting the connecting word such between of and certain in the clause relating to an avowry concerning parcel of the de *284 raised tenements. With that word it would be more obvious that the certainty of an avowry concerning parcel must be the same as if it related to the whole. The pleader has here, as we were told on the argument, relied upon the clause relative to parcel as independent of the previous part of the section, and as dispensing with all the elements which go to constitute the right of distress. He has accordingly shown no tenancy whatever, and no landlord; and the argument might go farther, if we are to regard the clause as 'entirely isolated, for it does not even require that the defendant should have a right to the rent. All you need aver is, that the place is parcel of premises for which the rent was due, and that the defendant has distrained. The clause, however, is not isolated. The plain meaning of the whole section is, first, that you may avow for a distress on the whole of the demised premises with the degree of generality allowed for that purpose; or, secondly, you may limit your avowry to parcel of the demised premises, with the same generality, but no greater, in all other respects, as if you avowed for a distress without mentioning parcel. This would be obvious enough from the statute requiring that the defendant should avow. What is an avowry ? It is, says Woodfall, “ The setting forth, as in a declaration, the nature and merits of the defendant’s case, showing that the distress taken by him was lawful, which must be done with such sufficient authority as will entitle him to a retorno habendo." (Woodf. Land. Sp Ten. 592, Lond. ed. of 1804.) The same definition has been repeated judicially in several cases. (See Hill v. Miller, 5 Serg. & Rawle, 355, 357; Wright v. Williams, 5 Cowen, 501, 2; English v. Burnell, 2 Wils. 258.) What was the evil for which section 41 provides ? I speak of all its provisions, except the clause dispensing with the name of the tenant; of all that was taken from the 11 Geo. 2. The English books give the answer. The mischief lay, not in the difficulty of describing the rent, and when payable; not in the difficulty of stating generally the relation of landlord and tenant between the avowant and occupier; but solely in the nicety of setting forth the numerous steps, often required by the common law, in a deduc *285 fcion of title from the owner in fee. A specimen of this may he seen hi Bennet v. Holbech, (2 Saund. 309, 22 Car. 2.) Such nicety resulted not only in frequent failures of justice, but ran into a disproportionate expense and an unseemly incumbrance on the record. The brief account of the evil given hy Serg. Williams in 2 Saund. 284, c. note (3) will show that it lay almost entirely in this line of detail. The late case of Banks v. Angell, (3 Nev. and Perry, 94,) fully adopts the view of Serg. Williams; and shows, I think, that the statute never would have passed had it not been for the existence of that evil. Indeed the case cited covers the whole ground. The defendants justified and made cognizance on a holding by the plaintiff as tenant of William Angelí, the avowant, under a demise by one John Angelí, without going on to connect the avowant with John Angelí. All the justices agreed that it would have been enough under 11 Geo. 2, to show generally, as the pleadings did, a holding by some one as tenant of the avowant, provided he had stopped there. But having added that the tenant held of him under a demise by John, it destroyed the force of the general averment. Coleridge, J. inquired of the counsel for the avowant, how he showed his client to hold as landlord at all ? and afterwards remarked that he appeared to be an entire stranger to the tenants of the land. Lord Denman, C. J. said that, under the statute, the title of the landlord might be alleged generally; but if he sets out more, he must shew how he is entitled. Williams, J. said, “ the act dispenses with the necessity of setting out the landlord’s title in detail, but these avowries do not show that the defendant had any title at all.” Littledale, J. observed, “ It has always been usual under that statute to aver that the plaintiff in replevin held of the defendant, or that some person so held; for the goods of the plaintiff, as a stranger, might be taken.” The authority of this case is more direct to the case at bar, because the avowries, at least one of them, was for a distress on parcel of the demised promises. This decision accords with the precedents. (See 3 Chit. Pl. 1046 et seq., Am. ed. of 1840.) There are several fatal defects in the third avowry by Mrs. Stocking; but it is enough to say that it makes out no right under the statute, for *286 want of showing privity of estate between her and the tenant Wilgus. The statute speaks of landlord and lessor, and of rents and services issuing out of lands. It does not extend to a rent-charge. (Wilk. On Repl. 58; 1 Chit. Pl. 499, Am. ed. of 1840.) How shall we know it is not a mere rent-charge, unless privity be shown? Showing such' privity is the only mode by' which the defendant can indicate a right to the privilege of interposing a general avowry at all. In the absence of such privity, she was bound to plead her title specially as at common law.
It is scarcely necessary to say that the defect cannot be aided by that part of the avowry which sets out a distress warrant and affidavit. This is intended merely to show the form in which a lawful authority to distrain was executed. It is not essential that they should be introduced into the avowry. (Webber v. Shearman, ante, p. 20.) The usual English form is sufficient, which stops with averring a distress generally. Beside, if the proceedings set out as to the distress could be called in aid, I do not see that, in either of the avowries, they show the relation of'landlord and tenant.
The first and second avowries are also fatally defective; They are for a distress on the premises under a demise upon which the tenant held over, and were evidently drawn from the precedent in 3 Chit. Pl. 1050, Am. ed. of 1840, viz. the “avowry for rent when the goods were distrained within six months after the end of the term, under 8 Ann. ch. 14.” That precedent is also in the general form allowed by the 11 Geo. 2, ch. 19, § 22. It contains one averment, however, which seems here to have been carefully left out by the pleader. The precedent in Chitty avers that the plaintiff held and enjoyed the premises_ as tenant of the defendant. Here, it is not averred that the plaintiff or any other person held and enjoyed the premises in that relation. The averment is simply that Wilgus held and enjoyed the premises as tenant thereof under a demise, without showing that this tenancy was under the defendant, or any person from whom she derived her title. In short, no relation of tenant to the defendant appears any where, either directly or indirectly, ex *287 pressly or impliedly. It is true, when we come to the verdict we find the defect supplied. The relation is there stated. Does this mend the matter? The badness of the avowries consists, not in a title defectively set forth; but in the failure to show any title at all. The jury find an essential fact not even suggested by the avowries in any form. Under the English rule, a plea setting forth a defective title is not aided by a verdict, although a statute in England provides, like ours, that insufficient pleading may be thus aided. (1 Chit. Pl. 681, 2, Am. ed. of 1840.) Both the common law and statute doctrine is stated broadly, thus: If the issue be such as necessarily required proof of the fact omitted, and without which it is not to be presumed that the judge would have sanctioned, or the jury would have found the verdict, the omission is cured. (1 Chit. Pl. 673, Am. ed. of 1840; 1 Saund. 228, note (1).) Yet the same books immediately go on to show that by this is not meant a total omission to aver an essential fact; but the thing presumed to be proved must, at least, be such as can be implied from the allegations on the record, by fair and reasonable intendment. The rule of our statute is that after verdict the judgment shall not be reversed, “ for omitting any allegation or averment of any matter, without proving which the jury ought not to have given such verdict.” (2 R. S. 424,5, § 7, subd. 9.) This statute, taken literally, would cure the omission of any allegation even of substance; as if, in a declaration for slander, the pleader should omit to state the slanderous words. This would be but the omission of an averment, without proving which no verdict could be found. Yet the judgment would be arrested. So if, in replevin, the defendant should, in avowing for a distress, omit to show any rent due; who would say that a verdict for the defendant should cure the omission? Suppose, in the first case, the jury should find and set out slanderous words; yet these not being in the declaration, though in all other respects it were perfect, the verdict could not be sustained. A contrary doctrine would, as remarked in Bacon’s Abridgment, (.Amendment, (E.) pl. 1.,) ruin all proceedings in courts of justice. The rule therefore, as the book says, does not extend to *288 matter of substance or whatever is essential to the gist of the action. The statute was doubtless intended to be a mere reenactment of the common law; and not to supply by verdict the omission of a substantial averment essential to the action or defence.
I think, therefore, the judgment shouldbe reversed for the defects in the avowries, although the plaintiff pleaded over, thus assuming that a holding under the defendant was averred; for pleading over no more cures an essential omission than a verdict. (1 Chit. Pl. 672, Am. ed. of 1840.)
Though the defects in the avowries are fatal to the defence, I shall, however, proceed to the consideration of some other among the numerous questions raised by counsel on his voluminous error hook.
There is an additional defect on the record which 1 am'inclined to think fatal. It lies in the verdict itself. The jury in effect find the issue on non cepit in favor of the defendant, which is virtually saying that she did not distrain. They also find for the defendant on the avowries which admit that she did distrain. The verdict first denies that the defendant ever acquired any lien on the goods, and in the next breath asserts that she did. This latter finding, standing alone, would indeed have entitled her to a judgment de retorno habendo, or, in its place, that which she took, viz., judgment for a recovery of the rent found to have been in arrear. The first finding would carry her costs only; but the second seems to place the cause in equilibrio. The verdict decided nothing, and the judgment should have been arrested, or a venire de novo awarded. The proper form would have been to find for the plaintiff on the plea of non cepit, and for the defendant on the avowries.
A general finding, had it been in this latter form, would have authorized the entry on the record of a verdict following the language of the issues. That is a matter under the superintendance of the court wherein the verdict is found. The verdict as entered in the short notes of the clerk has been brought here by certiorari, on the allegation of diminution. But we cannot, *289 on writ of error, notice the entries of the clerk below. We are confined to the judgment roll proper, unless there be some error in fact such as is triable by a jury, or unless there be a bill of exceptions. (Mellish v. Richardson, 1 Clarke & Finnelly, 224,230,234 to 237; 9 Bing. 125, S. C.) The case of Hart v. Seixas, (21 Wend. 40,) approves of Mellish v. Richardson, according to which the court below may amend the record so as to conform it to the truth, and the court of error cannot overrule the amendment, whether right or wrong. The finding of juries is short; and a verdict entered on the roll in their language could never be sustained. We can look to it only as it is drawn out on the roll. The case of Rhodes v. Bunts, (21 Wend. 19,) is in point. See also Hart v. Seixas, supra.)
As to the bill of exceptions, there is no difficulty in seeing that the defendant made out a title, and showed that, during the time within which the rent in question accrued, she was the land'ady of the premises.
Nor was the distress made prematurely. The lease indeed contained a proviso that, on the rent being in arrear for twenty days, the lessor might distrain; and the distress was made before that time had elapsed. But the defendant, having a reversion, might distrain of common right, and that immediately on the rent falling due. The proviso containing no negative words did not restrict the right. The clause is indeed very common in leases, and has been from the earliest times; and, on the fact being mentioned at the bar, we at first thought the objection grounded upon it fatal. The counsel for the defendant was correct, however, when he told us that, in case of a rent-service, the clause has been deemed entirely nugatory ever since the tme of Littleton, who says so in his treatise upon tenures. (Co. Litt. 204, b. 205, a.) The clause would doubtless be deemed equally nugatory in respect to rent-charge and rent-seck, since 1 R. S. 738, 2c? ed. § 18, has, in respect to the right of distress, put all rents on the same footing.
In overruling the evidence offered by the plaintiff, that, before the rent distrained for fell due, Wilgus, the tenant, had assigned *290 his lease to Dibble, who paid rent to the defendant, I think the court erred. This error did not consist in denying that the assignment took away the defendant’s right to distrain the goods of the plaintiff, or any other person in possession of the premises either as assignee or sub-tenant. The court were right in deciding that it did not. The question lay in the form of the avowries. These stated that Wilgus continued tenant for the time during which the rent accrued, and up to the time of the distress. The plaintiff had pleaded the assignment to Dibble, and that the owners had consented and accepted rent of him. This was scarcely denied as to the heirs. The replications to the 5th pleas, I think, admit the fact by not denying it. But suppose it otherwise: the plaintiff offered to prove the very consent set up in his 4th and 5th pleas. Such proof, as I have admitted already, would not have destroyed the right to distrain the plaintiff’s goods; but it would have falsified the particular right set up in the avowries, which is, by these, founded on Wilgus’ tenancy. The avowries, by alleging his tenancy, render it material. I admit that, under the concluding clause in our statute, (2 R. S. 436, § 41, 2d ed.,) the defendant might not have been bound to name any tenant; but having named one, she was bound to speak truly. She made the name material ; and, according to Bristow v. Wright, (Dougl. 665,) she must show it in proof. (And see Banks v. Angell, before cited.)(a) If Wilgus was, on her proof, prima facie to be deemed her tenant, it might have been shown that he had ceased to be so by the acceptance of rent from his assignee. (Lord Mansfield, C. J, in Wadham v. Marlowe, 8 East. 314, 316, note.) This acceptance was offered to be shown, and the evidence excluded. 1 admit the variance was amendable in the court below; (Wright v. Williams, 5 Cowen, 501;) and even if that court had amended without allowing costs, we could not have questioned the proceeding. (Mellish v. Richardson, before cited.) It might or might not have been right to allow *291 the amendment with or without terms. But we cannot here take the office of allowing it at all. We cannot see how fa$4he rights of the plaintiff may have been affected by the issue. We must notice that issue, with the decision which erroneously declared it to be immaterial and cut off all proof upon it. We must act upon the error as it is. True, the objection is technical ; and so are all those 1 have considered. The merits were with the defendant below: but she has not pursued her remedy according to the forms of law. We may be allowed to regret the defect, without being able to avoid the consequence, which is, in this case, a total reversal of the judgment, not merely for error in the bill of exceptions, but for such errors apparent on the record as are not amendable here.
Are the defects in the pleadings amendable below ? On the answer to this question depends our duty as to directing the award of a venire de novo. The defect in the record is not more glaring or substantial than was the omission to assign breaches in Reed v. Drake, (7 Wend. 345;) and the merits were gone into as fully and freely upon the trial of this cause as of that. There, a venire de novo was awarded, Mr. Justice Nelson observing that the court below would no doubt allow the plaintiff to amend his declaration, on terms. If, in that case, on this court setting aside the verdict and judgment, the court below could allow the plaintiff to go back to his declaration, it may clearly, in this case, permit the defendant to go back, and amend her avowries ; and then a venire de novo may go to try the new issues. The effect of the reversal will be to nullify the judgment and the verdict; and we may either direct a venire de novo peremptorily, or conditionally, by giving leave to issue one, if the court below shall think proper to allow an amendment. The courts may, at common law, even after issue joined, perhaps after verdict, in their discretion, allow a party to amend his pleadings, in form or substance; and either may clearly be done now by 2 R. 8.343, § 1,2, 2d ed., with the provision that, where the amendment is in substance, the adverse party shall be allowed to answer the amended pleading.
The judgment in this case must accordingly be reversed; *292 but with leave to the court below to allow an amendment of the avowries, on the defendant below paying all the costs of the plaintiff below which have accrued since the pleas and avowries of the defendant below were interposed, including the costs of the writ of error; and in the event of such amendment being made, and the avowries being followed to a proper issue, a venire de novo may be ordered by the court below.
Rule accordingly.

 See Cowen & Hill’s Notes to Phill. Ev., p. 494, 5.