𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HILL V. WOODWARD AND ALS.

March 20th, 1884. ·

*Absent, *Lacy*, J.*

1. JUDGMENTS AND DECREES—*Conclusiveness.*—The doctrine that the un-reversed judgment of a court of competent jurisdiction is conclusive, and cannot be collaterally attacked, is well established. *Wimbish* v. *Breeden*, 77 Va. 324.

2. IDEM—*Presumptions.*—However assailed, unless want of authority plainly appears on face of record, every presumption exists in favor of judgments of courts of general jurisdiction, and entire record will be inspected.

3. IDEM—*Want of notice.*—Same rule prevails where defendant alleges want of summons or notice, and *onus* of showing want of notice is on the impeacher. Mere failure of record to state affirmatively that notice was given, is insufficient for the impeachment.

4. IDEM—*Idem—Case at bar.*—Suit in circuit court of N K county to subject decedent's estate to his debts, and assign or commute dower. Widow's name appears not in summons returned executed October 7th, 1878. Bill filed January rules, 1879, contains her name as one of the defendants ; and decree entered May 31st, 1879, brings cause on to be heard on bill *taken for confessed as to all the defendants·;* account of debts and dower taken, reported and confirmed. Cause removed to circuit court of K W county. Land sold free of dower. Widow present at sale and bid. Sale confirmed. In 1881 she filed petition alleging she had never been properly made party to the suit, and asked that it be begun *de novo.* Petition dismissed. On appeal—

HELD :

    1. Proper presumptions favor the jurisdiction of the court and the validity of its proceedings.

    2. Between issuance of first summons and filing of bill separate writ was probably issued and served on widow and returned, though that fact appears not in the record here.

    3. Her petition was, under the circumstances, properly dismissed.

----

\* He had been counsel below.

Appeal from decree of circuit court of King William county, entered June 3d, 1881, in the cause of Robert A. Woodward, administrator of Eliza Meredith, deceased, and others, creditors of Wm. Hill, deceased, against Walker Hill, administrator, Catherine B. Hill, widow, and Walker Hill, and six other children and heirs of said Wm. Hill, deceased. Object of suit was to subject decedent Wm. Hill's estate to pay his debts. It was brought in circuit court of New Kent county, to October rules 1878. Widow's name does not appear in process returned executed. Bill was filed at January rules 1879, and contains widow's name as one of the defendants. Decree of May 31st, 1879, brings the cause " on to be heard on the bill *taken for confessed as to all of the defendants,*" and directs an account of decedent's real estate and debts. Report shows debts to the amount of $2,014.02, as of June 1st, 1880, one whereof was a judgment for $1,037.72, paramount to widow's dower. Report confirmed and land decreed to be sold subject to dower, if it brought enough to pay the judgment, with costs and expenses, but if not, then to be sold free of dower. At this juncture the cause was removed to circuit court of King William county. The land was sold August 12, 1880. Sale was reported June 3d, 1881, and confirmed without exception. Report shows that widow was notified of the sale, and was present, and bid for the land, and afterwards regretted she had not purchased it, but objected not to the sale. Sale was free of dower, to Thomas Ingersoll, at $2,-305. On 1st June, 1881, she filed her petition, alleging she had never been properly made a party to the suit, and asking to be made a party, and that all the proceedings be vacated, and the suit be heard *de novo.* Her petition was dismissed by the decree of June 3d, 1881, and she obtained an appeal to this court.

Remaining facts are stated in opinion.

*J. F. Hubbard*, for the appellant.

*James C. Lamb, W. F. C. Gregory*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

In the petition for appeal several errors are assigned, but in his note of argument the counsel for the appellant confines the discussion to the single point, that the appellant was *not* made a party to the suit in the court below.

In the logical order of discussion it is contended by counsel for the appellees (1) that the record sufficiently shows that the appellant had been properly made a party, and (2) that even if she had not been, she is estopped by her conduct from denying it.

This is a case in which a party, under very peculiar circumstances of apparent neglect, comes forward at the last stage of a tedious and expensive litigation to overturn and nullify the proceedings had in a suit in a court of competent general jurisdiction. To effect this purpose several things must be observed and kept constantly in view, viz: (1) That the appellant is assailing the record, and the *onus* is upon her to show that she was not properly made a party. (2) That it is not sufficient that she should raise a doubt as to whether she had been made a party. (3) That the record and judgment being those of a court of general jurisdiction, every presumption will be made in their favor. And (4) that in determining this question, this court, no less than the court below, will look at the *whole record*.

It is contended in argument, by the counsel for the appellant, that in this case no presumptions arise in aid of the record, as in cases where the judgment of a court of general jurisdiction is attacked in a collateral proceeding; and the annotation of authorities to *Crepps* v. *Durden*, 1 Smith's Leading Cases, 7 Am. Ed., 1125, is relied on to sus-

tain this position. *Crepps* v. *Durden*, when looked to, does
not sustain the proposition contended for. On the contrary,
the notes to that case distinctly show the rule to be that the
jurisdiction of courts of general jurisdiction will be presumed
to have been properly exercised. The language relied on by
counsel for the appellant is this: "It is generally conceded
that when the want of notice appears of record, the judgment
is erroneous and may be reversed; and the better opinion
seems to be that the same result will follow if the proceed-
ings fail to show that the defendant was summoned or ap-
peared," citing a number of authorities. And the annota-
tors further say : "An opposite decision in *Hart* v. *Seixas*,
21 Wend. 40, seems to have been founded on the mistaken
supposition that a court of error cannot look beyond the
record, as returned or certified, for the purpose of ascer-
taining whether the rules of law have been observed. Al-
though the original or judicial writ by which the suit was
instituted, the sheriff's return, and the warrants of the at-
torneys on either side, are not ordinarily sent up to the
court above, it is always competent for the plaintiff in error
to allege a defect in any such particular. A *certiorari* will
then issue to ascertain the truth of his statement, and the
judgment be reversed if it is sustained, unless the omission
is merely formal and accidental, when it may be corrected
by an entry *nunc pro tunc.*" We shall presently see that
the failure by proper steps to have the record in the one
court brought to and inspected by the other court, or its
contents learned and acted on by that other, was an omis-
sion on the part of the appellant in the conduct of her case
in the court below, which weighed against her below, along
with other circumstances in the record, and which in this
court makes the presumptions in favor of the correctness
of the judgment of the court below conclusive.

But however this may be, whether the annotators in the
language relied on by the appellant's counsel, as quoted

above, intended to state the general rule deduced from all the authorities, or merely to state certain exceptional rulings, the annotators must speak for themselves. On the succeeding page (1126) it is said: "The difference between holding that a judgment may be reversed on error or set aside by the court which rendered it, and disregarding it as a nullity while still untouched, is the whole difference between what is absolutely void and what is merely voidable, and involves consequences of too much moment to be lightly disregarded." Citing *Trimble* v. *Long,* 14 Ohio N. S. 431, 439; *Voorhees* v. *The Bank of the United States,* 10 Peters, 449. And the annotators proceed to say: "It was accordingly decided in *Foot* v. *Stevens,* 17 Wend. 483, that the judgment of a county court was conclusive on the defendant, although the record contained no averment that he was served with process, or had notice in any way of the proceedings against him." And it is further said: "This decision was followed in *Hart* v. *Siexas,* 21 Wend. 40, where the general principle that the jurisdiction of superior courts will be presumed to have been properly exercised, was ably vindicated, although carried somewhat beyond its legitimate sphere." Thus it is seen that *Hart* v. *Seixas,* so far from being represented as in conflict with the established rule, is referred to as an able vindication of the rule and as following in the footsteps of the case of Foot v. Stevens, *supra,* the only criticism being that it extended the rule somewhat beyond its legitimate sphere.

Then, on same page, the annotators say that, "notwithstanding there are a number of cases in this country which tend more or less strongly to sustain the proposition that, as notice is essential to confer jurisdiction, the judgment will be invalid unless the record contain some entry or averment that notice was given"; citing *Given* v. *McCarroll,* 1 S. & M. 368; *Steen* v. *Steen,* 3 Cushman, 513; "and while there are others that go further and hold that judi-

cial proceedings may be avoided, by proof that proper notice was not given, in opposition to a positive averment on the record that it was"; and citing several cases to that effect, finally admits the established rule in this language: "But the weight of authority is much the other way, and in favor of the position taken in *Foot* v. *Stevens,* and *Hart* v. *Seixas,* that where the cause is within the jurisdiction of a superior court, it will be presumed to have taken the necessary steps to acquire jurisdiction over the parties"— citing a great number of decisions both of the supreme court of the United States, and of many of the States, and among them the case of *Reynolds* v. *Stansbury,* 20 Ohio, 344, where an order vacating a judgment was held valid, although there was nothing in the record to indicate that the plaintiff was notified to appear and show cause; and the court said that while the judgments of inferior courts were void, unless the record showed that the parties had appeared or been summoned, there was a conclusive presumption in favor of the proceedings of a superior court. So, in the notes to *Crepps* v. *Durden,* it is also said: "It was decided in *Horner* v. *Doe,* 1 Ind. 131; *Wright* v. *Marsh,* 2 Iowa, 94; and *Pierce* v. *Griffin,* 16 Id. 552, that the parties will be presumed to have been amenable to the authority of the court, unless the record shows that they were not; while it was held in *Moore* v. *Stooks,* 1 Ohio St. 369, that a judgment cannot be impeached for want of notice, unless the failure to give it appears by something more explicit than the mere failure of the record to show that it was given." And it is said: "The soundness of these decisions can hardly be doubted, if we reflect that where the parties reside within the jurisdiction, the question whether notice was given and a day assigned for them to appear, turns not on whether the requisite authority existed, but on whether it was properly exercised, and consequently falls within the general rule that everything must be presumed

in favor of the proceedings of superior courts, unless there is a plain excess or want of authority.

The rule thus established is essential to the repose and safety of society, and the inconvenience and uncertainty which would result from the establishment of a less stringent rule would greatly outweigh any possible benefits to be derived thereby. When a court of general jurisdiction (as in this case) has pronounced judgment, its adjudication should be as conclusive on the question whether a party was duly notified as on any other point necessary to a proper determination of the cause. *Trimble* v. *Long,* 13 Ohio N. S. 431.

In view of the authorities collected in the notes to *Crepps* v. *Durden* we can but concur in the clearly expressed and sound reasoning of the counsel for the appellees, that there is nothing in the language there used to indicate that that cogent reasoning is meant to be applied only to those cases wherein the judgment of a court of general jurisdiction is attacked in a collateral proceeding, or that there is any reason for so limiting it. Every argument in favor of the judgment in the one case applies with equal force in the other. It is well said in argument by counsel for the appellees that *verity* is assumed for the judgments, not *because it is collaterally attacked,* but for reasons inherent in the nature of the tribunal whose judgment it is, and for reasons of policy so strongly expressed in the authorities cited.

We do not, however, have to look beyond Virginia for authority in support of the rule in question. In *Harman* v. *City of Lynchburg,* 33 Gratt. 43, Burks, J., delivering the opinion of this court, said: " The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correct-

ness must prevail." And in the same opinion Judge Burks quotes with approbation the opinion of Lord Wensleydale in *Mayor, &c., of Beverly* v. *Attorney-General,* 6 H. L. Cases, 310, in which his lordship, indicating the degree of weight attributable to a judgment of a court of competent jurisdiction when brought under review, said : " I take it to be perfectly clear that when a court of error is considering a former decision on appeal, that decision is not to be overturned unless the court of error is perfectly satisfied that the decision is wrong. *Prima facie* it is to be considered a right decision, and is not to be deprived of its effect unless it is clearly proved to the satisfaction of the judges that the decision is wrong ; but he must consider the whole circumstances together, and if he still feels satisfied upon the whole of the case that the decision is wrong, he ought undoubtedly to overturn it ; it is only to be considered as *prima facie* right. The *onus* lies upon the opposite party to show that it is wrong, and if he satisfies the conscience of the judge that it is wrong it ought to be reversed."

Squared by the rule thus established, has the appellant made out her case ? Has she shown that what she asserted in her petition in the court below was true ? Did she do any thing to satisfy the conscience of the judge that she had no notice, that she had no day in court, that she had not been properly made a party to the suit ? Clearly she did not show either. At the utmost she did no more than to raise a doubt upon the question. This was not enough. She was required by the rule to do more ; she was required to prove her case ; she did not do so ; she did not even resort to proper proceedings to bring up from the clerk's office of New Kent, where the suit was brought, to the judge of the circuit court of King William, before whom the case was tried, the rule book and process book provided by law to show that causes have been regularly matured

for hearing. This would have established her contention, if true, or would have gone far to do so. She simply contented herself with assailing the records of the court by assertions contained in her petition, which was unsupported by affidavit, and thus relying solely upon the insufficient circumstance that the original process did not show that she had been served with notice, when she was named on the face of the bill as one of the defendants; when her infant children, presumably living with her, were defendants, and appear to have been served with notice; when she had been notified by the commissioner who sold the land of the time and place of sale, and when by her agent she was present, and a bidder at that sale; and when, from all the circumstances disclosed by the record, we must presume that process was served on her.

It is true her name does not appear in the process found in the record at the date of her petition, but there may have been and presumably was an additional writ, especially for her. This often occurs in practice. The attorney, in making his memorandum for the clerk, in the beginning, may have unintentionally omitted her name, or, if not so omitted, the clerk in issuing the writ may by oversight have failed to insert her name in the writ. In either case the defect, when discovered, could only be remedied by a separate writ against her, for there can be but one *original* writ in any case, though there may be as many copies as necessary. It was certainly competent to supplement or cure the defect in the original in this way; the object of the writ being notice, the law would be substantially complied with. That such writ did issue seems from the record most probable.

The writ found now in the record was sued out on the 5th, and served on the 7th of October, 1878; the bill was not filed until January rules, 1879. Between these dates there were four rule days, to any one of which such sepa-

rate writ might have been and probably was returned. The bill when filed contains her name as one of the defendants. The bill was not taken for confessed until the April rules, 1879. Here again intervened three rule days, to any one of which such separate writ might have been returned. The bill was taken for confessed as to *the defendants* without exception. Then the decree of May 31st, 1879, brings the cause on upon the bill *taken for confessed as to all the de-fendants,* without any exception. We must presume it highly improbable that the counsel who brought the suit and prosecuted it in the court below would have taken this decree, or that the court would have entered it if the cause had not been regularly matured for hearing. In fact, it is highly improbable that the clerk, with his rule and process book, as well as his fee book, before him, would ever have put the case on the hearing docket when it was not ready for hearing.

Again, aside from the presumption that the case was regularly matured and heard, the fair presumption is that there was such separate writ, and that it was lost from the papers or mislaid. The file of papers passed through two clerks' offices—the one in New Kent and the other in King William. That they have not passed unharmed is apparent from the fact that the record is incomplete in other respects; two other papers at least have come up missing— the one is the exceptions to the report of the commissioner who took the account in the case, the other is the report of the commissioners who assigned the widow's dower. It can with no more certainty be said that either of these papers was once a part of the record than that this missing writ was.

All the proceedings at rules in this suit were had in the circuit court of New Kent. When the case came on for hearing in the circuit court of King William, that court did not have the books in New Kent before it; but the

clerk of the latter county had copied on the bill, as required by law, the proceedings had at rules as they appeared in his rule book; this was the only guide, and the proper one for the court; and it there appearing that the writ had been returned executed upon *the defendants*, that there was a decree *nisi* against the defendants, and that the appellant was one of the defendants named in the bill. When the court saw that this was the state of the record, the conclusion, in the absence of proof to the contrary, was unavoidable that Catherine B. Hill had been served with notice, was a party regularly before the court, and amenable to its decree.

But it is contended by the counsel for the appellant that if any process in fact issued and was served upon her, the process book of the clerk of New Kent county will show it; and it is suggested that the appellees should show this by resort to a *certiorari*. This is in effect calling upon the adverse party to prove or disprove the case asserted by her. There is no more elementary or well settled general principle than that a party affirming a proposition in court, must prove his case in order to be entitled to the judgment of the court in his favor.

By her conduct, as disclosed by the record, the appellant is estopped from questioning the verity of the record. Her evident knowledge of the pendency of this suit and its object, her seeming acquiescence, and her delay and refusal to speak, though not served with notice in the regular way, makes it proper for her to remain silent now that others have acquired rights while she was standing by in silence, if not in actual acquiescence. It was not only competent for her to speak in time and be made a party if she had not been, but it was her duty. In *Voorhees* v. *The Bank of the U. S.*, 10 Peters, 473, it is said: "It is among the elementary principles of the common law, that whoever would complain of the proceedings of a court, must do it in such

time as not to injure his adversary by unnecessary delay in the assertion of his rights." So, if a person with full knowledge permits another, without objection, to sell his property as the property of the vendor, he will not be permitted to question the title of a *bona fide* purchaser. The appellant stood by and acquiesced in all the long course of litigation. If she did not speak in assertion of her rights, if she had any, when it was her duty as well as her privilege, it is a virtue that she should be silent now.

Several other questions are raised in the petition for appeal, but they have not been insisted on in argument. From the views already expressed on the main question, it must be obvious that they cannot be properly considered. Upon the vital question, Was the appellant properly before the court below and amenable to its decree? That court, a court of competent general jurisdiction, has passed its sentence, and its jurisdiction to do so cannot be questioned under the circumstances disclosed by the record. There is no error in the decree complained of, and the same must be affirmed.

DECREE AFFIRMED.