## Staunton.

### WADE ET ALS. v. HANCOCK AND AGEE.

#### September 13, 1882.

1. JURISDICTION.—In support of jurisdiction in courts of general powers, presumption is liberal; but not where want of jurisdiction appears on face of proceedings.

2. IDEM.—Want of jurisdiction makes the judgment a *nullity*, and it may be so treated by any court in any proceeding, direct or collateral.

3. IDEM.—A judgment may be valid to the extent of the jurisdiction, and invalid beyond.

4. IDEM—*Statutory.*—In summary proceedings under Code 1873, ch. 76, § 9, circuit courts have jurisdiction to *appoint*, *change*, and *remove* church trustees; but not to determine *how* they shall administer their trust.

5. IDEM—*Idem.*—Appointment, change, and removal of trustees, under that section, must be "on application of the proper authorities of the congregation," and not of any volunteer.

6. IDEM.—*Remedy* for such as are improperly excluded from their rights by the trustees is by bill in chancery filed for the purpose. See *Brooke* v. *Shacklett*, 13 Gratt. 301, and *Hoskinson and als.* v. *Pusey and als.*, 32 Gratt. 428.

7. QUÆRE.—Does act of February 18, 1867, (Acts 1866–'7, p. 649,) provide legitimate means of determining "the right, title, and control" of the property in this case so as to bind parties in interest against their will?

Error to judgment of circuit court of Floyd county in a proceeding by Peter L. Hancock and John T. Agee *agains* Isaac Wade, John Wade, and Josiah Bryant. Opinion states the case. Argued at Wytheville, but decided at Staunton.

*John E. Penn*, for the appellants.

1. Appellees had no right to proceed under Code 1873, ch. 76, § 9, as they were not "the proper authorities of the congregation," but only volunteers.

2. That section was not intended to apply to cases like this; but, if so intended, it violates bill of rights, § 18.

3. That portion of the orders complained of, which directs *how* the trustees shall administer their trust, was *coram non judice,* and null.

*A. A. Phlegar,* for the appellees.

1. Appellants accepted the trust under the order of November, 1881, with its conditions, and were bound by it.

2. Refusal to obey that order was a contempt of court, which might be brought to its notice by anybody.

3. The order appealed from only explains the prior order.

4. Appellees and their associates acted "in conformity with the discipline of the church," and consequently were the proper authorities to proceed under Code 1873, ch. 76, § 9.

5. The case presents no question of violation of religious liberty asserted by bill of rights. It is simply, Can a majority of the members of a church, who have violated no rule of discipline, be debarred from worshiping in the church by the mandate of a minority?

BURKS, J., delivered the opinion of the court.

I am of opinion that the judgment of the circuit court, rendered on the 6th day of May, 1882, and brought here for review by writ of error, is erroneous. It is erroneous because void, and void because the court had no jurisdiction to render it. And for the same reason (the want of jurisdiction) the previous order, made at the November term, 1881, the validity of which is collaterally drawn in question, is also erroneous and void in part.

On the 14th day of September, 1848, several persons, by deed of that date, conveyed two and one-fourth acres of

land in Floyd county to David N. Howell and Samuel Agnew, describing them as "trustees of the Primitive Church of West Fork, in the county of Floyd," "upon trust (as declared) that the said David N. Howell and Samuel Agnew shall permit the church aforesaid to enter thereon, build and construct a house upon the same, and such house use and occupy at will and pleasure for divine service and public worship until said church wholly neglect and refuse to occupy the same."

The use of the church building, erected under the provisions of this deed, is the subject of controversy in this cause. It appears that there is a division of the Primitive Church of West Fork, an independent local ecclesiastical organization, into two parties, the division growing out of the severance, or attempted severance, of the church from the Smith's River Association, with which it had connection—a connection which it had the right to make and dissolve at will—one party, with Elder Tuggle at its head, claiming to be the true church, or "the church in order," as it is expressed; and the other party, headed by Elder Dodd, making a similar pretension, and each claiming the exclusive use of the building. The original trustees being dead, the Tuggle party, represented by the plaintiffs in error, made a motion in the circuit court of Floyd for the appointment of new trustees, and the motion was resisted by Hancock and Agee (the defendants in error), acting in the interest of the other party, as it would seem.

Upon the hearing of the motion, the court made the order before mentioned, November, 1881, which is as follows:

" This day came the parties by their attorneys, and the court, having heard the testimony, is of opinion and doth appoint Isaac Wade, John Wade, Sr., and Joseph Bryant trustees of West Fork Primitive Church, in this county, in place of Samuel Agnew and David N. Howell

deceased; but the court being of opinion from the evidence that there is a division among the church members of said church, some of whom have or wished to withdraw from Smith's River Association, and some of whom desire to adhere to said association, it is ordered that said trustees hold the said church property for all the members of said church, including both factions, until the church authority decides the question at issue between them."

No exception was taken to this order by either party, and the evidence on the hearing of the motion is not in the record.

Subsequently, at the May term, 1882, of the court, Hancock and Agee (the defendants in the former motion), upon notice in writing previously given, made a motion to "attach, fine and imprison" Wade and others, who had been appointed trustees by the former order, for alleged disobedience of that order in excluding from the church building those members of the church desiring to remain with the Smith River Association, and also to remove said trustees and appoint others.

It was on the hearing of this motion that the order complained of was entered. The order, after reciting that no contempt of court was designed, proceeds as follows: "It is considered by the court that no fine will be imposed on the trustees at this time, but they are directed to hold the church property equally for the use of that division of the church composed of persons who were members of the church on the Saturday before the third Sunday in September, 1881, and now desire to remain with Smith River Association; and that division of the church composed of persons who were members of the church on the Saturday before the third Sunday in September, 1881, and now desire to separate from said association, until such time as a vote shall be taken, certified to, and acted on by the court, as is provided for in § 9, ch. 76, Code of 1873. And it ap-

pearing from the evidence that the faction desiring to sepa-
rate from said association have selected the Saturday be-
fore the third Sunday in each month as the first day of
their regular meetings, and that the other faction have se-
lected the Saturday before the second Sunday in each
month for the first day of their regular meetings, it is or-
dered that the trustees respect such an arrangement, and
that they allow to either faction the use of the building at
such other times as it may be desired for divine service,
and does not conflict with previous appointments by the
others."

It ts admitted on all sides that the *sole* authority for this
order, as well as that of the November term, 1881, is to be
found in § 9, ch. 76, Code of 1873. The previous section (8)
allows a conveyance of land for the use or benefit of any
religious congregation as a place for public worship, &c.,
&c. Section 9, so far as it relates to the question of juris-
diction to be now determined, reads as follows: "The cir-
cuit court of the county or corporation wherein there may
be any parcel of such land, or the greater part thereof,
may, on application of the proper authorities of such con-
gregation, from time to time appoint trustees, either where
there were or are none, or in place of former trustees, and
change those so appointed, whenever it may seem to the
court proper, to effect or promote the purpose of the con-
veyance, devise, or dedication; and the legal title to such
land shall, for that purpose, be vested in the said trustees,
for the time being, and their successors." The residue of
the section incorporated by ch. 210, Acts 1866–7, has no
bearing on the question of jurisdiction arising on that por-
tion of the section which has been quoted. It contemplates
an entirely different proceeding.

Now, manifestly, the only authority conferred upon the
court is the appointment, change, and removal of trustees.
The proceeding is summary and *ex parte*—to be made "on

application of the proper authorities of the congregation "—
and looks merely to securing the continued representation
of the legal title and by proper persons. The trust is de-
clared by the authority creating it "the conveyance, de-
vise, or dedication." The function, and the only function,
of the court in this proceeding is to determine *who* shall
administer the trust—not *how* it shall be administered.
The latter power appertains to the court in the exercise of
its general jurisdiction as a court of equity, and can be in-
voked only in the mode appropriate to that forum.

It is not denied that presumption is liberally indulged
in support of the jurisdiction of a superior court of general
powers, but, even as to such a court, there is no place for
presumption when the want of jurisdiction appears affirma-
tively on the face of its proceedings. In such case its judg-
ments and decrees are of no greater force than those of
inferior courts of limited jurisdiction acting beyond the
scope of their powers. This subject is well considered by
Mr. Justice Field in *Galpin* v. *Page,* 18 Wall. 350. See also
*Ex parte Lange,* Id. 163 ; *Bigelow* v. *Forrest,* 9 Wall. 339 ; *Wind-
sor* v. *McVeigh,* 93 U. S. (3 Otto), 274 ; Hare's note to *Crepps*
v. *Durden,* 1 Smith's Lead. Cas. (4 Amer. ed.), 703–710.

Moreover, while the circuit courts have general powers
as courts of law and chancery, their jurisdiction in a sum-
mary proceeding under the statute before quoted is special,
and limited to the appointment and removal of the trus-
tees. It does not extend to the regulation of the conduct
of the trustees in the administration of the trust under the
instrument creating it. When the trustees are appointed,
where none exist, or if they exist, when they are removed
and others appointed to succeed them, the power of the
court under the statute is exhausted. What it does beyond
this is in excess of power, without authority and void.
The court had the power to appoint trustees on the "appli-
cation of the proper authorities of the congregation." It

did appoint them, and so far the order of November term, 1881, is valid. The residue of the order is without force, because without authority in the court to make it. That a judgment, to the extent of the jurisdiction to render it, may be valid, while so much thereof as is in excess of jurisdiction is void, is shown by the cases cited in *ex parte Lange,* 18 Wall. 177. See what is said by Justice Miller on p. 178.

It results that the order of May, 1882, is also void. It is explanatory and amendatory of the previous order, and is based upon it. The writ of error to the last order presents the question of the validity of the first. It does not matter that the question comes up collaterally. A void judgment is *ex vi termini* a nullity, and may be so declared and treated by this court, and every other, when the validity or invalidity of the judgment is a question to be determined either in a direct or collateral proceeding.

So far as the court had jurisdiction, I do not inquire whether there was error or not in the exercise of that jurisdiction by the order of November term, 1881, *appointing the trustees.* Whether the court erred in the appointment, which it had authority to make, is not open to inquiry under the present writ. The order to that extent must be assumed to be correct.

The last motion was made, not only to punish for contempt the disobedience of that portion of the previous order which was void, but also to remove the trustees duly appointed by that order and put others in their places. Such a motion—that is, to remove the trustees and appoint others—might have been properly made under the statute, but the removal and appointment could only be " on application of the proper authorities of the congregation." It does not appear that any such application was made. Hancock and Agee made the motion, but they showed no authority for it. Proceedings of the Tuggle branch of the

church were offered in evidence and are copied in full in the record, but we find none of the proceedings, if any there be, of the other branch—certainly, nothing to show or to indicate in the slightest manner that Hancock and Agee were directed by competent authority to set on foot and prosecute judicial proceedings for the removal of Wade and others, appointed trustees by the previous order. The members of the Primitive Church of West Fork, who consider themselves aggrieved by the conduct of the trustees, are not without remedy. These trustees, though appointed by the court, hold, according to the deed of September, 1848, to the use of that church—that is, to the use of the members of that religious congregation accustomed to worship at the West Fork building, and the trustees are bound to execute the trust declared by the deed. Who are *members* thus entitled to the use, it would be out of place now to determine, if the record enabled us to do so. It is sufficient to say, that those who are really *members* of that congregation are entitled to the use of the building under the provisions of the deed. And if they are improperly excluded by the trustees, they may be restored to the enjoyment of their rights and privileges on a bill in chancery filed for the purpose, according to precedents furnished by *Brooke and others* v. *Shacklett,* 13 Gratt. 301, and *Hoskinson and others* v. *Pusey and others,* 32 Gratt. 428; and in that proceeding also the trustees may be removed, if such removal be proper, and others appointed to take their places.

As to whether the amendatory act (already adverted to), passed February 18, 1867 (ch. 210, Acts 1866-7, pp. 649, 650), provides a legitimate means of determining "the right, title and control" of the property in question, so as to bind parties in interest against their will, I give no opinion, and for the reasons I beg to refer to what I said in *Hoskinson and others* v. *Pusey and others, supra,* on page 440 of the report.

It does not appear that any proceedings under this act have been commenced, or, if commenced, that they have been concluded. What will be the effect of such proceedings, if any shall be had, this court will not now undertake to decide.

I am of opinion that the judgment of the circuit court, rendered May 6, 1882, should be reversed and the motion of the plaintiffs (Hancock and Agee) dismissed.

JUDGMENT REVERSED.