# Richmond.

FERGUSON'S ADM'R AND ALS V. TEEL AND ALS.

DECEMBER 16th, 1886.

1. JUDGMENTS—*Presumptions.*—It is well settled that judgments of courts of competent jurisdiction are presumed to be correct. However assailed, such presumption provails, unless want of authority appears on the face of the record.

2. IDEM— *Want of notice.*—Same rule applies where want of notice, or summons, is alleged ; and *onus* of showing want of summons is on the assailant. Mere absence of return of service on summons is insufficient for impeachment, where the record shows that at rules the cause was matured as to all the defendants.

3. CONTRACTS—*Failure of consideration—Recovery.*—Where vendor sells land of his wife without conveyance, and part of price is paid, with understanding expressed in receipt for sum so paid, that if a third person's heirs (who were likewise the heirs of wife), got a redivision of their ancestor's lands (whereof the land sold is part), vendor is to pay vendee his money back; and wife dies intestate without having had issue, and the heirs get the land from vendee by legal proceedings, the latter is entitled to have his money, so paid upon a consideration that failed, refunded by vendor.

Argued at Wytheville.    Decided at Richmond.

Appeal from decree of circuit court of Franklin county, pronounced 20th May, 1884, in the cause wherein George Teel, suing for himself and other creditors of I. M. Ferguson, deceased, is plaintiff, and Henry S. Trout, administrator of I. M. Ferguson, and the heirs of the latter, are defendants.

The facts are these: On the 17th day of August, 1870, the said George Teel purchased of the said Isham M. Ferguson a

tract of land in said county of Franklin, on the north fork of Blackwater river, containing 110 acres, at the price of $——. At the time of the contract, Teel paid to Ferguson $450, part of the purchase price, when Ferguson executed the following paper, to wit:

"$450.00.    Received of George Teel, four hundred and fifty dollars, in part payment of a certain *track* of land in Franklin county, the State of Virginia, on the north fork of Blackwater, known as a *potion* of Wm. Childress' land, *bóuned* as follows, with Thomas C. Calloway, Elizabeth Trailin, the *airs* of Moses Greer, &c.    The understanding of the above contract is, if the *airs* of Wm. Childress should get a *redevision* in the lands, I am to pay the said Teel his money back; as witness my hand and seal, this 17th day of August, 1870.    I. M. FERGUSON."

[ 10.    10.    5.    3.    5.    Rev. Stamps.]

The above receipt contains all the written evidence of the contract of sale by Ferguson to Teel, except the following receipt:

"Received of George Teel ($200.00) two hundred dollars, in part payment on land, this 19th day of September, 1871.    I. M. FERGUSON."

It nowhere distinctly appears what was the precise amount of the contract price at which the land was sold by Ferguson to Teel, but from all the facts and circumstances disclosed by the record, the fair inference is that it was $1,600, of which $450 was paid at the time of sale, as per above receipt of 17th of August, 1870, the residue to be paid in two equal annual installments, of which $200 was paid on the 19th day of September, 1871, as per above receipt of that date.

The land thus sold, as it turned out, did not belong to Ferguson, but was the property of his wife, Sarah (then living), and was allotted to her in the division of the estate of her

father, William Childress, deceased. Mrs. Ferguson refused, or neglected, to join with her husband in the sale and conveyance of her said land; and in the year 1880 she died intestate and without ever leaving any issue of her body. In the meanwhile Teel had been in possession under Ferguson from the date of his purchase, and had put on the land valuable permanent improvements estimated at some $———. The estimated value of the annual rent when Teel took possession was $50, which increased as the improvements by Teel were erected, to eighty, and then to $100.

After the death of Mrs. Ferguson, to wit: in September, 1880, her heirs-at-law, who were also the descendants and heirs-at-law of William Childress, deceased, instituted a suit in chancery in the circuit court of Franklin county, asserting their right to the land in question and for a partition of same among them. The suit was matured for hearing, and at the hearing, the distributees being numerous and partition in kind impracticable, the land was decreed to be sold and the proceeds distributed among said heirs. It was accordingly sold, and to protect himself as far as he could, George Teel became the purchaser at the advanced price of $1,780. Ferguson was then living, and told Teel he should lose nothing; and the commissioner of sale reported that Teel (through Ferguson) paid the cash payment—$70.70.

In this condition of things, Ferguson having in the meantime died, George Teel for himself and others, creditors of said Ferguson, filed his bill in the circuit court of Franklin county against Henry S. Trout, the duly qualified administrator of said Ferguson, and his heirs-at-law and distributees, the object of the suit being to collect from Ferguson's estate the said sum of $650, paid by Teel to Ferguson on said land contract, with interest on $450, part thereof, from the 17th of August, 1870, and on $200, the residue thereof, from the 19th September, 1871.

The bill, after setting forth substantially the facts herein-before stated, and exhibiting the bill and proceedings in said suit in which the land in question was recovered, sold, and the proceeds distributed among the heirs-at-law of Mrs. Ferguson, and exhibiting also the two receipts from Ferguson to Teel, designated as Exhibits "B" and "D," respectively, the one being for $450, dated August 17, 1870, and the other for $200, dated 19th September, 1871; and especially refers to the first-named receipt, and relies thereon for Ferguson's obligation to refund the money paid with interest.

In his bill, Teel says; "Your orator further represents that he was put in possession of this land at the time of his purchase; that he honestly believed that Isham M. Ferguson would procure for him a good and lawful right thereto, and in good faith, believing, as he did, that he was the owner thereof, he put permanent improvements on same worth at the lowest estimate $1,000; all of which went to enhance the land, but all of which he lost, and he only claims the amount agreed by Ferguson to be paid him—to wit, the sum of $650 and interest, as above stated." And the bill prays for an account of the indebtedness of Isham M. Ferguson, deceased, and for a settlement of the accounts of Henry S. Trout, administrator of said Ferguson, and for general relief; and that Henry S. Trout, administrator of Isham M. Ferguson, deceased, Edward Tench and Elizabeth, his wife, Luke Ferguson and Jake Ferguson, the last two being non-residents, be made parties defendant, and required to answer, &c.

At the September rules, 1881, of said circuit court, it was ordered: "That the plaintiff's bill should be taken for confessed at the next rules, unless the defendants should appear and plead, answer or demur to the same." And at the succeeding October rules the following order was made: "The defendants having failed to appear and plead, answer or demur, it

is ordered that the order entered at the last rules be confirmed, and the plaintiff's bill taken for confessed and set for hearing."

In term, on the 7th day of December, 1881, Henry S. Trout, administrator of Isham M. Ferguson, by leave of court, filed his answer admitting in other respects, the statements contained in the plaintiff's bill, but denying that said Ferguson, at time of his death, was indebted to the complainant in the sum of $650, with interest as claimed in the bill; and insisting that by the terms of the contract, as set forth in the receipt marked "B," and filed with the bill, Ferguson was to pay the money back only in the event the heirs of Wm. Childress should get a "re-division" of the land, and that the heirs of said Childress did not get such "re-division," but that the land had been sold for partition among the heirs of Mrs. Ferguson, who had acquired the same from the estate of her father, the said Childress. And the respondent further says that complainant, when he purchased the land in August, 1870, was put in possession and remained in the undisturbed possession thereof for over ten years, and that the rents and profits of the land for that period would compensate the complainant for his improvements, if he were entitled to anything therefor. And respondent charges that after the death of Mrs. Ferguson and the institution of the suit by her heirs-at-law as aforesaid, Isham M. Ferguson promised the complainant that if he would purchase said land when sold at the suit of Mrs. Ferguson's heirs, he, Ferguson, would pay all the complainant might have to pay therefor, over and above what complainant owed him, Ferguson, on account of same, and that in pursuance of such agreement, Ferguson paid the cash payment required at said sale, to wit: $70.70.

On the 10th of December, 1881, the cause was brought on to hearing "on the bill of the complainant, the exhibits filed therewith, the order of publication made against the non-resi-

dent defendants, which appears to have been duly posted and published, and the answer of Henry S. Trout, administrator of I. M. Ferguson, deceased, and the general replication thereto; when a decree was entered directing the proper accounts to be taken. The commissioner took the accounts as required, and returned his report with depositions taken by him. He reports first, as admitted by the answer of Trout, administrator, that there were sufficient assets in his hands to pay the debts of said intestate, unless there should be brought forward debts of which he had no knowledge. Second, he reports as the only debt proved, the debt claimed by the complainant, Teel, and this he reports at $1,086.57, as of the 29th of April, 1884. The commissioner arrived at this result by allowing the two payments made by Teel to Ferguson as aforesaid, and interest thereon from the times they were made, and crediting Ferguson's estate with the cash payment of $70.70, made by Ferguson for Teel at the second or judicial sale of the land. The report was excepted to by counsel for Ferguson's estate on the ground that nothing was due.

Later, to wit: At the May term, 1884, by leave of court, the said administrator filed an amended answer, the object of which was to correct the statement made in the original answer as to the contract price agreed to be paid by Teel to Ferguson for said land, and to correct an estimate filed with said original answer in effect admitting that there was due to Teel from Ferguson's estate the sum of $370.58, when by the amended answer it is claimed there was only due the sum of $———, which it is admitted should be paid.

On the 20th day of May, 1884, the cause came on to final hearing, when a decree was rendered overruling said exceptions to the commissioner's report and confirming said report, and requiring Henry S. Trout, administrator of Isham M. Ferguson, to pay to the plaintiff the sum of $1,086.57 with interest

on $650, a part thereof, from the 19th of April, 1884, and costs, it being admitted by said administrator that there was in his hands sufficient assets out of which to pay same. From this decree the case is here on appeal.

*Samuel Griffin,* for the appellants.

*Phlegar & Johnson,* for the appellee.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The appellants first assignment of error is, that there should have been no decree in the cause until the bill had been matured as to all the parties defendant. And for specification it is said, "Elizabeth A. Tench, the wife of Edmund Tench, and a sister and heir of the aforesaid Isham M. Ferguson, deceased, was made a party defendant to said bill, and a writ of summons was sued out against her, but by the return made it appears to have been served upon her husband, and not upon her. The bill was, therefore, not ready for a hearing as to her, and yet the record shows that it was taken for confessed as to all the defendants, and a decree was entered affecting the rights of all."

This admission of what appears by the record, demonstrates that the objection for want of notice cannot and ought not to prevail. It is true that a judgment against a person who has not been served with notice is a void judgment, and is *ex vi termini,* a nullity. *Kyles* v. *Ford,* 2 Ran. 1; *Hickman* v. *Sarkey,* 6 Gratt. 212; *Underwood* v. *MeVeigh,* 23 Gratt. 418; *Wade* v. *Hancock,* 76 Va. 620, and *Lavell and Jordan* v. *McCurdy,* 77 Va. 763. Hence, to impeach and overturn judgments of courts of competent jurisdiction involves consequences of too

much moment to be lightly regarded; and when a court of general jurisdiction has pronounced judgment, its adjudication should be as conclusive on the question whether a party was duly notified as on any other point necessary to a proper determination of the cause. *Trimble* v. *Long*, 13 Ohio, N. S. 431; *Hill* v. *Woodward*, 78 Va. 765, and authorities cited.

It is true the copy of the summons which appears in the record, and in which Mrs. Tench's name appears, is returned executed on her husband, Edmund Tench. This, at the utmost, only creates a doubt, for both husband and wife are made parties defendant in the bill, and process issued for both; and whilst there could be but one original writ, there could be as many copies as necessary, and for aught that appears by the record the return of service on Mrs. Tench may have been made on another copy, or the fact of service may have satisfactorily appeared to the court, though not appearing affirmatively by the return here. However, there is nothing in the record to show affirmatively that process was not served on Mrs. Tench. On the contrary, it appears that the cause was matured at rules as to all the defendants. To impeach a judgment under such circumstances, it being a judgment of a court of general jurisdiction, and the party being within its jurisdictional limits, it is not enough to raise a doubt merely; nor will it suffice that the record fails to show that notice was given, the *onus* lies upon the party assailing the judgment to show that it is wrong, and it is only when he satisfies the conscience of the court that the judgment is wrong that it should be disturbed, the recognized rule being that every thing must be presumed in favor of the proceedings of a court of general jurisdiction, unless there is a plain excess or want of authority. *Wade* v. *Hancock and Agee, supra; Hill* v. *Woodward, supra; Harman* v. *City of Lynchburg*, 33 Gratt. 43. In the last named case, Burks, J., said: "The judgment of a court of

competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail."

Moreover, this objection, for want of notice, was not made until long after the rendition of the final decree of May 20, 1884. The first intimation we have of it is found in a vacation decree pronounced on the 6th day of November, 1884, in these words: "This cause came on this day to be again heard upon the papers formerly read and upon the motion of the defendant, Henry S. Trout, administrator of Isham M. Ferguson, deceased, to correct the record in this cause, so as to have the bill matured against Elizabeth A. Tench, one of the heirs of Isham M. Ferguson, deceased, in pursuance of notice, to which motion the said George Teel appeared by counsel and waived exceptions to said motion because of want of time, and was argued by counsel. Upon consideration whereof, the said motion of the said defendant is overruled." No proceeding could well have been more irregular than was this. No proper proceeding is taken to rehear or review and set aside the decree, but the court is simply asked to correct the record so as to mature the bill as against one of the defendants, and this after final decree. Of course, the motion should should have been refused as absurdly irregular and wanting in merit.

The appellants' second assignment of error is, that the appellee, Teel, had no right to recover in this suit upon the contract filed. The contract referred to is the receipt of 17th of August, 1870, executed by Isham M. Ferguson to George Teel, the appellee, for $450 for, and in part payment for, the land in question, in which occurs this language: "The understanding of the above contract is, if the *airs* of William Childress should get a *redivision* in the lands, I am to pay the said Teel his money back."

As respects the effect of this stipulation in the contract, it is urged by counsel for the appellants that there is no evidence that the "*heirs of* Wm. Childress" did get a "redivision" of the lands.    That on the contrary, it appears that Teel, the purchaser from Ferguson, was not interfered with for over ten years, when, after the death of Mrs. Ferguson, *her heirs* claimed the land, and procured a sale thereof for partition among them; and that the possession of Teel was not disturbed until after her death, and that the fact that her heirs then inherited the land, is conclusive evidence that the *heirs* of *Wm. Childress* did not get a "redivision in the lands."    And, in support of this view, it is further urged that there was no breach of the contract by Ferguson; that Teel had only a right of action upon the implied contract to make a good title, for the breach of which he was entitled in a court of law to such damages as might be assessed in his favor; and that Teel's claim was for unliquidated damages and did not entitle him to a creditor's bill, and the same should have been dismissed.

This contention, in the light of the attendant circumstances, is wholly untenable.    The receipt of August 17th, 1870, contains the only written evidence of the terms of the contract between the parties, is signed only by Ferguson, and must be taken most strongly against him as the party executing the instrument, and is, moreover, plainly the awkward work of an illiterate person.    And it is equally clear that the words "*airs* of Wm. Childress," were used simply to designate the persons who, by reason of the surrounding circumstances, might in the then future assert a title to the injury of Teel. The land had been allotted to Mrs. Ferguson in the division of the estate of her deceased father, Wm. Childress, and was absolutely hers, and not the property of her husband, Isham M. Ferguson.

It was an open fact to both Ferguson and Teel, that if Mrs. Ferguson should fail or refuse to join with her husband in the sale and conveyance of her land, or if she should die without joining in and completing the contract, the land would be subject to any testamentary disposition she might make in respect thereto, or, in the event of her intestacy, would go to her heirs at law, who were the lineal descendants and heirs at law of Wm. Childress also.

Under such circumstances it was reasonable and natural for Teel to stipulate to have his money paid back to him if he failed to get the land, and it was but justice for Ferguson to pay it back on the happening of the event named. The event thus in the contemplation of the parties at the time of entering into the contract, has transpired; the heirs at law of Mrs. Ferguson, who were also the heirs at law of Wm. Childress, have, by due process of law, taken the land away from Teel; and upon the happening of that event, Ferguson became the debtor of Teel to the amount of $650, paid by the latter to the former, with interest on the respective payments constituting that sum from the time they were made.

Being thus the creditor of Ferguson, who, at the judicial sale, failed to come forward and purchase the land, as he might have done, and thus place himself in a position that would not only have protected his vendee, Teel, but would have enabled him to demand and have of Teel, specific execution of the contract, it became and was the duty of Ferguson to pay, as it was the right of Teel to demand and have back, his money with interest.

The plain common sense meaning of the contract is, and the intention of the parties was, when viewed in the light of the language used by Ferguson in the receipt of August 17th, 1870, as explained by attendant circumstances, that if Teel did not get the land Ferguson was to pay back the purchase money

Opinion.

received.   Such was Ferguson's promise, and he having in his lifetime failed to comply, or put himself in a condition that he could comply, with his contract when he had an opportunity of doing so, he became Teel's debtor in a fixed and definite sum, and it was competent for Teel to proceed by a creditor's bill, have the proper accounts taken and reported, and to have a decree for the amount due him.

We find no error in the decree, and the same must be affirmed.

DECREE AFFIRMED.