## Richmond.

### DILLARD V. CENTRAL VIRGINIA IRON CO.

JANUARY 13th, 1887.

Absent, LEWIS, P.

1. JUDGMENTS— *Void for want of jurisdiction.*—No presumption exists in favor of the validity of judgments even of courts of general jurisdiction, where want of jurisdiction affirmatively appears on the face of the proceedings. Want of jurisdiction makes such judgments null ; and they may be so treated by any court in any proceeding, direct or collateral. *Wade* v. *Hancock*, 76 Va. 620.
2. CONSTRUCTION OF STATUTES—*Service of process beyond the State— Persons—Natural—Artificial.*—Code 1873, ch. 166, sec. 15, applies only to non-resident defendants who are natural persons, and not to corporations nor their agents. Service of process upon corporations must be *in this State* upon an officer or agent *resident here.* Code 1873, ch. 166, sec. 7.
3. *Case at bar.*—Suit is brought in a county in this State against a corporation domiciled in that county, and process is served upon the president of the corporation resident in Philadelphia, by a third party, who makes affidavit, as required by Code 1873, ch. 166, sec. 15—

HELD :

Such service is insufficient to give the court jurisdiction.

Error to judgment of circuit court of Amherst county, rendered in vacation, July 16th, 1885, whereby an execution in favor of Mary E. Dillard against The Central Virginia Iron Company was quashed, and the judgment by default whereon said execution issued, was reversed by proceedings under Code

1873, ch. 177, sec. 5, on the ground that the judgment had been entered up as an office judgment without legal service of process on the defendant.

The facts necessary to a proper understanding of the case are these: On the 5th of May, 1881, the plaintiff in error, Mary E. Dillard, sold to the defendant in error, "The Central Virginia Iron Company," a corporation chartered by the circuit court of Amherst county, a certain tract or parcel of land, in said county, at the price of $15.000, of which a part, $8,000, was paid in cash, and for the residue two bonds were executed, dated 5th May, 1881, for $3,500 each, payable six and twelve months thereafter, and secured by a deed of trust on said land. Default having been made in the payment of these bonds, as soon as the second one became due, to wit: in August, 1882, suit was brought thereon in the circuit court of said county. The summons was issued August 16th, 1882, returnable to the succeeding September rules, and was directed—"*To the sheriff of Amherst county.*" The summons appears in the record without any regular return endorsed thereon, but appended thereto is the following affidavit, relied on by the plaintiff in error as a sufficient return, to wit:

"United States of America—City of Philadelphia—*s. s.:*

"Be it known that on the day of the date hereof, before me, the undersigned notary public for the Commonwealth of Pennsylvania, personally appeared Thomas V. Midlen, of the city of Philadelphia, State of Pennsylvania, who, being duly sworn according to law, did depose and say that he did, on the 19th day of August, 1882, in person, in the city aforesaid, at the place of residence of Wm. R. Hart, president of The Central Virginia Iron Company, deliver into the hands of the said Hart a true copy of the annexed summons, of which said

Hart made due acknowledgment of the service. That said Hart is a non-resident of the State of Virginia, and resides in the city of Philadelphia, Pa. Thos. G. Midlen. [Seal.] Sworn and subscribed before me, this 9th day of August, A. D. 1882. A. P. Rutherford, Notary Public." Presumably, the date of this affidavit, "9th day of August, 1882," was a clerical mistake, and was intended to be "19th day of August, 1882."

The summons being thus returned, at the September rules, 1882, the plaintiff filed her declaration in debt against said company, alleging the non-payment by it of said two writings obligatory for $3,000 each, according to the true tenor and effect thereof, and demanding payment accordingly; and thereupon the same proceedings were had, and the cause matured at rules, and the conditional judgment confirmed, just as if the process had been returned regularly executed. And there being no appearance by the defendant, at the October term, 1882, judgment was rendered in favor of the plaintiff against the defendant for $7,000, with interest on $3,500, part thereof, from the 5th November, 1881, and on $3,500, the residue, from the 5th day of May, 1882, and costs. Thus the plaintiff recovered her judgment as if by default. And she lost no time in following it up; for she filed her bill in said circuit court, to enforce the lien of her said judgment, in time to have it matured for hearing at the April term thereof, 1883, at which time the defendant answered the bill, and alleged imperfections which prevented further progress for the time; but it is not necessary to enter here and now into the details of these proceedings in chancery.

In this condition of things, on the 26th of May, 1885, the plaintiff sued out a writ of *fieri facias* on the said judgment, which was levied on certain property of the Central Virginia Iron Company. Thereupon the said defendant company, proceeding under section 5, chapter 177, Code 1873, in respect

"of errors insufficient in an appellate court," promptly gave the plaintiff notice that the defendant would move to quash said execution and vacate said supposed judgment, on the ground that said " supposed judgment was void, illegal, and without force or authority, having been rendered without appearance, and without due service of process."

Upon the hearing of this motion, notice of which had been duly served on the plaintiff, the judge of said circuit court pronounced "the said judgment erroneous, because it appeared . that there was no legal service of the process on the defendant, and it was therefore considered that the said judgment be reversed and annulled, and that the said execution be quashed," &c. To which said judgment the defendant in said motion, the plaintiff in error here, excepted, and tendered her bill of exceptions, setting forth all the evidence adduced on the hearing of said motion; which was signed and sealed by the court, and made part of the record. The case is here on a writ of error to said judgment of 16th of July, 1885.

*W. W. Larkin,* for the plaintiff in error.

*Kean & Kean,* for the defendant in error.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The sole question to be decided by this court is, Did the circuit court err in its said judgment of July 16, 1885, in annulling the previous judgment by default rendered at the October term, 1882, and in quashing the execution which issued thereon? We are of opinion that said judgment by default, entered at the October term, 1882, of the circuit court of Amherst county, was void for want of jurisdiction in the court to render it, the

defendant not having been notified as required by law, and that there is no error in the judgment complained of reversing and annulling said previous judgment and quashing the execution which issued thereon.

The question will be considered, first, upon the record of the action at law alone; secondly, upon the whole matter as presented by the bill of exceptions of the plaintiff in error. It may be observed at the outset, that while it is well settled that every reasonable presumption will be indulged in support of the regularity of the proceedings and the validity of the judgment of a court of competent general jurisdiction, when both the subject matter and the parties are within the territorial limits of the court's jurisdiction; yet, even with respect to such a court, no presumption is allowable when the want of jurisdiction affirmatively appears on the face of its proceedings. For a full discussion of this subject, see notes to *Crepps* v. *Daiden*, 1 Smith, Lead. Cas. (7 Am. Ed.) 1125; *Galpin* v. *Page*, 18 Wall. 350; *Bigelow* v. *Forrest*, 9 Wall. 339; *Windsor* v. *McVeigh*, 93 U. S. 274; *Wade* v. *Hancock and Agee*, 76 Va. 620; and *Hill* v. *Woodward*, 78 Va. 767.

The trouble in the case in hand grew out of the misuse of the process to commence a suit, issuing from the court in which the suit was brought, and directed to the sheriff of that county but which was sent beyond the jurisdictional limits of the court into another State, and there attempted to be served upon the president of the defendant company, a corporation created under the laws of this State.

In order properly to understand the effect of the several legislative enactments in regard to the service of process on corporations, it is necessary to consider them in connection with the provisions of chapter 165, Code 1873, prescribing *where* suits shall be brought, and with the provision contained in section two, of chapter 166, which directs *what officer* may execute process.

By section one of said chapter 165, it is provided, first, that "any action at law, or suit in equity, except where it is otherwise specially provided, may be brought in any county or corporation wherein any of the defendants may reside. Secondly. If a corporation be a defendant, wherein its principal office is, or wherein its mayor, rector, president, or other chief officer resides. Thirdly. If it be to recover land, or subject it to a debt, or be against a defendant who resides without, but has estate or debts due him within this State, where such land, estate or debts, or any part thereof, may be. Other provisions of said first section need not be referred to here, as they have no application to the case in hand.

By the second section of same chapter it is provided: "An action may be brought in any county or corporation wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein."

The second section of chapter 166, Code 1873, provides: "Process from any court, whether original, *mesne*, or final, may be directed to the sheriff of any county or sergeant of any corporation, except that process against a defendant (unless a railroad, canal, turnpike, or telegraph company be a defendant) to answer in any action brought under the second section of chapter one hundred and sixty-five, shall not be directed to an officer of any other county or corporation than that wherein the action is brought."

Now, looking to the record of the suit at law, we find that it was an action of debt, against the defendant corporation, in the circuit court of Amherst; that the process was directed to the sheriff of Amherst county; and that there was no service by any officer, on any person in any way representing the defendant company, in the State of Virginia.

The record, *at law*, does not show where the domicile of the defendant company was. It's domicile must necessarily have

been (1) in the county of Amherst, where the suit was brought, or (2), out of the county of Amherst, and elsewhere in Virginia, or (3), outside of the State of Virginia.

1st. If the defendant company had its domicile in Amherst county, as might be inferred from the fact that the process to commence the suit was directed to the sheriff of that county, then it was not a *non-resident* defendant, and there was no necessity, and certainly no legal authority for sending the process, thus directed, to Philadelphia, and no kind of service outside the State could be lawful or valid. It is true, that under section two of chapter 166, any process may be executed on or before the return day thereof; and if it appear to be *duly* served and good in other respects, it shall be deemed *valid*, although not directed to any *officer*, or if directed to an officer, though executed by *any other* to whom it might lawfully have been directed. The obvious meaning of this provision is, that although the process be directed to an officer to whom, under said second section, it is lawfully directed, yet it may be executed by any *other officer* to whom it might lawfully have been directed. Clearly, then, this provision has no application to the case in hand, as it cannot be pretended that the process in the case under consideration, though directed to the sheriff of Amherst, could have been lawfully directed to the person in Philadelphia who made the affidavit of service relied on by the plaintiff in error. Moreover, under said section two of chapter 166, the defendant corporation not being a railroad, canal, turnpike, or telegraph company, and the cause of action having arisen in said county of Amherst, which authorized the plaintiff to sue in said county, although the defendant did not reside therein, as provided by section two of chapter 165, yet process against the defendant company could not have been directed to, or executed by, an officer of any other county or corporation than that wherein the action was brought. It is,

therefore, clear that the provisions of said section apply only to the execution of process by an officer of the county wherein the suit is brought, and to whom the process is, or might have been, lawfully directed.   See *Warren* v. *Saunders,* 27 Gratt. 264.

2d.  The same reasoning holds good if the defendant was a Virginia corporation, not domiciled in Amherst county when the suit was brought, and the affidavit of service, in the city of Philadelphia, relied on by the plaintiff in error, was void service for the additional reason that the only ground of jurisdiction in Amherst, against a single defendant, resident elsewhere in the State, would be, as already shown, that the cause of action arose in that county; in which case the statute (Code 1873, ch. 166, sec. 2,) expressly forbids the process to be sent out of the county.   See also, *Warren* v. *Saunders, supra.*

3d. But grant that the defendant company was a non-resident corporation when the suit at law was brought, and that the circuit court of Amherst had jurisdiction under the third clause of section one of ch. 165, and might have proceeded by order of publication, the defendant being a non-resident and having estate in the county where the suit was; but as there was no attachment or other proceeding *in rem,* the court was without jurisdiction to render said judgment at law of October term 1882.

In *Pennoyer* v. *Neff,* 95 U. S. 715, it is said: "Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act.   *   *   *   *   *  Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it

for a public purpose.    In other words, such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the *personal* rights and obligations of the defendants—that is, where the suit is merely *in personam*, constructive service in this form upon a non-resident *in ineffectual for* any purpose.    Process from the tribunals of one State cannot run into another State, and summon parties therein domiciled to leave its territory and respond to proceedings against them."    This principle is illustrated by the cases of *Poindexter* v. *Burwell* and *Wimer* v. *Wimer*, recently decided by this court, and reported in this volume.    Upon the hypothesis that the defendant company, in the case in hand, was a non-resident, these authorities are conclusive.

Again: jurisdiction of a suit against a corporation is, by the second clause of sec. seven, ch. 166, Code 1873, in the county or corporation "wherein its chief office is, or wherein its chief officer resides."    In this case, the right to bring the suit in the county of Amherst could only have been because the chief office of the defendant corporation was therein situated, as it appears by the record that William R. Hart was the president of the defendant company, and that he resided in Philadelphia.    If, then, the ground of jurisdiction was that the chief office of the company was in Amherst county, the defendant must have been a Virginia corporation, and there was no lawful authority for sending the process into another State for any purpose.    The provisions thus far examined with respect to the service of process, were designed to prescribe the lawful mode of making personal service of process upon natural persons, and they have no application to the mode of service upon corporations.

But, by the seventh section of said chapter 166, the manner of service of process upon corporations is expressly prescribed.

It is sufficient to serve it on the president, or other officer or agent, as therein designated. Such service must be in the county or corporation *in which he,* upon whom it is served, *resides,* and the return must show this, or it is not valid. It is entirely clear, too, that this section seven refers to service *in this State,* on an officer or agent *resident in this State,* and that none of its provisions have any application to process sent for *personal service,* outside of the State, on a non-resident defendant, as a substitute for an order of publication.

Clearly, then, upon the record which the circuit judge was reviewing, this was a case in which, as was said by Moncure, P., in *Warren* v. *Saunders, supra,* "the court may, *ex-officio,* and *a fortiori,* upon motion, abate." But it is insisted that the service of process in this case, as set forth in the affidavit of Thos. G. Midlen, appended thereto, is sufficient under the 15th section of chapter 166, Code 1873. But this position is clearly untenable. The object of this section is to prescribe where a case may be tried after publication. It contains, too, a clause with respect to personal service, which is in this language: "Personal service of the summons, *scire facias,* or notice, may be made by any person not a party to or otherwise interested in the subject matter in controversy, on a *non-*resident defendant out of the State, which service shall have the same effect, and no other, as an order of publication duly posted and published against *him.* In such case the return must be made under oath, and must show the time and place of such service, and that the defendant so served is a non-resident of this State."

Doubtless, the *personal* service referred to in this section was intended, in a certain sense, to be in lieu of publication, but only as to *natural* persons who are non-resident defendants. It has no application to a non-resident defendant corporation. And in this case, even if the plaintiff had resorted to the ancil-

lary proceeding by *attachment,* the "personal service" referred to and authorized by said 15th section on a non-resident, must be *on him,* not on any agent or representative.   In many cases this mode of substituted service is not only more convenient, but cheaper, more expeditious, and equally reliable as publication, and the statute permits it, in a proper case, on the non-resident *in person.*   It is, however, in derogation of the common law, and the statute permitting it must be literally complied with.   It is obvious that service on an agent or representative, no matter what his relation to the defendant may be, is not *personal service on him.*   Indeed, service on an agent in this State, except when so expressly provided, cannot dispense with publication as to the non-resident defendant, whether a natural person or a corporation.

It is evident in this case that the service of process was intended to be under said section 15 of chapter 166.   The affidavit, however, not only follows the language of the statute, but goes further, and, after the clause stating the delivery of a copy of the summons to W. R. Hart, adds the words, "of which said Hart made due acknowledgment of the service." These words are not found in the statute, and it may be asked, by what authority did the maker of this affidavit undertake to say what constitutes "due acknowledgment of the service"? Grant, for the sake of the argument, that Hart was the president of the defendant corporation, that did not constitute him an agent of the company to acknowledge service of process, or otherwise to dispense with due and regular procedure against it.   The affidavit is, in this respect, purely *ex parte* and unauthorized by law, and cannot be taken as proof of acknowledgment of service.   If Hart was president of the company, and had authority to acknowledge service of process, the plaintiff should have shown it, and then his acknowledgment in writing, signed by him and endorsed on the writ, would have been suffi-

cient.    In every point of view, it is clear that the mode of service relied on was unauthorized and is invalid.    It is, therefore, plain that upon the record at law, which the circuit judge was reviewing, this was a case in which, as was said by Moncure, P., in *Warren* v. *Saunders, supra,* "the court may, *ex-officio,* and *a fortiori,* upon motion, abate the writ or the suit" (here the execution and judgment), "as the nature of the matter may require."

It only remains to notice briefly the view of the case presented by the bill of exceptions taken by the plaintiff in error to the judgment of the circuit judge sustaining the motion below.    The bill of exceptions sets forth all the evidence adduced on the hearing of the motion below, being the proceedings and judgment at law, the bill of the complainant, the defendant in error here, the object of which was to avoid a certain deed of trust, and to enforce the said judgment against the property thereby conveyed, and also against the land sold by the complainant to said defendant; and the answer of the defendant corporation, in which are certain admissions.    In said answer the defendant company acknowledged the justness of the debt, and that the complainant had taken the judgment, an abstract of which she had filed with her bill; states the regret of the defendant's officers that the debt was unsatisfied; denies the validity of the grounds on which the deed of trust was assailed, and points out that the intention and effect, under the statute, was to put all unsecured creditors, who unlike the plaintiff, had no special security, on the same footing, as to security by lien on other lands of the company, as the plaintiff, and the answer then proceeds to allege certain impediments and imperfection in the plaintiff's case, claimed to be insuperable until new parties and new issues should be made·

It is insisted that these admissions as to the justness of the debt, and that the plaintiff had taken a judgment therefor,

worked an estoppel to the defendant to deny the validity of said judgment. This insistance is wholly without merit. The authorities relied upon to sustain it have no bearing upon the case in hand. The admissions relied on are simple facts admitted in pleading, and are not such admissions as constitute estoppels: 2 Rob. Pr. (new) 309–310. But, aside from all other questions, the judgment was absolutely void, and was liable to be so declared and treated whenever its validity should be called in question *in any court*, either in a direct or collateral proceeding. *Wade* v. *Hancock*, 76 Va. 620.

In this view the judgment might have been successfully assailed by the answer in said chancery proceeding, but it was not; and the admissions aforesaid could not work an estoppel by the record, because the judgment being void for want of jurisdiction to render it, no admission, no consent, either before or after its rendition, could confer jurisdiction and render it valid. We find no error in the judgment of the court below, and the same must be affirmed with costs to the defendant in error.

Judgment affirmed.